## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MEDICOR LTD., *et al.*, [1] | Case No. 07-10877 (MFW) |
| Debtors. | Jointly Administered |

## <u>FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION</u>

Kenneth A. Rosen
Jeffrey D. Prol
Jeffrey A. Kramer
Michael Savetsky
LOWENSTEIN SANDLER PC
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400

Victoria W. Counihan (DE Bar No. 3488)
Dennis Meloro (DE Bar No. 4435)
GREENBERG TRAURIG, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360

Counsel for Debtors and Debtors in Possession

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: MediCor Ltd. (1462), International Integrated Incorporated (N/A), International Integrated USA Incorporated (7244), MediCor Management, Inc. (3404), MediCor Development Company (7726), MediCor Aesthetics (7361), III Acquisition Corporation d/b/a PIP.America (3969) and Intellectual Property International, Inc. (2819).

# TABLE OF CONTENTS

ARTICLE I. CERTAIN DEFINITIONS; RULES OF INTERPRETATION; COMPUTATION OF TIME............................................................................................1

ARTICLE II. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS...........................13

ARTICLE III. TREATMENT OF UNCLASSIFIED CLAIMS......................................................15

ARTICLE IV. TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS..........16

ARTICLE V. ACCEPTANCE OR REJECTION OF THE PLAN ...............................................18

ARTICLE VI. MEANS OF IMPLEMENTING THE PLAN........................................................19

ARTICLE VII. PROVISIONS GOVERNING RESERVES AND DISTRIBUTIONS................29

ARTICLE VIII. EXECUTORY CONTRACTS AND  LEASES .................................................33

ARTICLE IX. CONFIRMATION AND CONSUMMATION OF THE PLAN..........................33

ARTICLE X. EFFECTS OF CONFIRMATION .........................................................................34

ARTICLE XI. RETENTION OF JURISDICTION.......................................................................38

ARTICLE XII. MISCELLANEOUS PROVISIONS ...................................................................40

*DEL 86307729v1 February 24, 2010*

MediCor Ltd. ("MediCor"), International Integrated Incorporated ("III"), International Integrated USA Incorporated ("III USA"), MediCor Management, Inc. ("MediCor Mgmt"), MediCor Development Company ("MDC"), MediCor Aesthetics ("MediCor Aesthetics"), III Acquisition Corporation d/b/a PIP.America ("PIP.America"), and Intellectual Property International, Inc. ("IPI"), the above-captioned debtors and debtors in possession (each a "Debtor", and collectively, the "Debtors") propose the following first amended plan ("Plan") for the liquidation of their businesses and for the resolution of outstanding claims against and interests in the Debtors. For a discussion of the Debtors' history, businesses, properties, operations, the Chapter 11 Cases, projections, risk factors, summary and analysis of the Plan, and certain other related matters, reference is hereby made to the disclosure statement with respect to the Plan (the "Disclosure Statement") that is distributed herewith. All Holders of Claims that are impaired and entitled to vote are encouraged to read the Plan and the Disclosure Statement before voting to accept or reject the Plan. All Holders of other Claims and of Equity Interests are encouraged to read the Plan and Disclosure Statement, as well. In the event of any inconsistencies between the Plan and Disclosure Statement, the terms and provisions of the Plan shall control.

**YOU SHOULD CONSULT WITH YOUR ATTORNEY BEFORE VOTING ON THE PLAN**.

## ARTICLE I.
## CERTAIN DEFINITIONS; RULES OF INTERPRETATION;
## <u>COMPUTATION OF TIME</u>

In addition to those terms that are defined in other Sections of the Plan, the terms which appear in the Plan as capitalized terms shall have the meanings set forth below. Any capitalized term used, but not defined, in the Plan shall have the meaning ascribed to it in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

**Section 1.1** **"521 Disclosure Schedules"** means the schedule of assets, liabilities and executory contracts and the statement of financial affairs of the Debtors filed pursuant to Section 521 of the Bankruptcy Code, and in accordance with the Official Bankruptcy Forms and the Bankruptcy Rules, as each has been, or may be, amended and supplemented from time to time.

**Section 1.2** **"Administrative Expense Bar Date"** means the date set forth in Section 3.3(a) herein.

**Section 1.3** **"Administrative Expense Claim**" means a Claim for costs and expenses of administration of the Chapter 11 Cases allowed under Sections 503(b), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises) and Claims of governmental units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 328, 330, 331, 363 or 503(b) of the Bankruptcy Code to the

extent incurred prior to the Effective Date; and (c) all fees and charges assessed against the Debtor's Estate under Section 1930, chapter 123 of title 28 of the United States Code.

**Section 1.4** "**Allowed Claim**" means all of or a portion of a Claim (a) against the Debtors which has been listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent, and with respect to which no contrary proof of claim has been filed, (b) as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court, or (c) as to which any objection has been settled, waived, withdrawn or denied by a Final Order, or (d) that is allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim and the Debtors (prior to the Effective Date), or the Liquidating Trustee (on or after the Effective Date), or (iii) pursuant to the terms of the Plan. For purposes of computing Distributions under the Plan, the term "Allowed Claim" shall not include interest, costs, fees or charges on such Claim from and after the Petition Date, except as provided in Section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in the Plan.

**Section 1.5** "**Assets**" means all (a) assets, property, interests and effects, real and personal, tangible and intangible, including but not limited to all Cash, real property interests, equity interests in all direct and indirect subsidiaries of MediCor, fixtures, equipment, furniture, other tangible property, accounts receivable (including, without limitation, payment obligations owing by any of MediCor's non-Debtor direct and indirect subsidiaries to any of the Debtors as of the Effective Date), tax refunds, contract rights, other intangible property, interests in employee benefit plans, causes of action, claims and rights of any kind of the Debtors, including any property of the Estates for purposes of Section 541 of the Bankruptcy Code and any causes of action potentially arising under chapter 5 of the Bankruptcy Code and any proceeds therefrom, and (b) proceeds, products, rents and profits of all of the foregoing.

**Section 1.6** "**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, and as such title has been, or may be, amended from time to time, to the extent that any such amendment is applicable to these Chapter 11 Cases.

**Section 1.7** "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware, or such other court having jurisdiction over these Chapter 11 Cases or any proceeding within, or appeal of an order entered in, the Chapter 11 Cases.

**Section 1.8** "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms or the Local Rules of the Bankruptcy Court, and as each has been, or may be, amended from time to time, to the extent that any such amendment is applicable to these Chapter 11 Cases.

**Section 1.9** "**Bankruptcy Settlement Order**" means the Final Order entered in the Chapter 11 Cases approving the settlement of the Southwest Exchange Claims on terms acceptable to the Debtors and the Prepetition Collateral Agent in consultation with the Committee.

**Section 1.10** "**Bar Date**" means, with respect to any particular Claim, the date set by the Bankruptcy Court as the last day for filing proofs of claim against the Debtors in these Chapter 11 Cases.

**Section 1.11 "Biosil Escrow Funds"** means the funds held in the escrow account previously established to hold the net proceeds from the sale of the Debtors' subsidiaries Biosil Ltd. and Nagor Ltd. pursuant to order of the Bankruptcy Court.

**Section 1.12 "Business Day"** means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

**Section 1.13 "Cash"** means money that is legal tender of the United States of America.

**Section 1.14 "Chapter 11 Cases"** means the voluntary chapter 11 cases commenced by the Debtors in the Bankruptcy Court under the Bankruptcy Code.

**Section 1.15 "Claim"** means a claim against a Debtor as defined in Section 101(5) of the Bankruptcy Code.

**Section 1.16 "Claims Objection Deadline"** shall mean that date which is one hundred twenty (120) days after the Effective Date or as otherwise extended by order of the Bankruptcy Court.

**Section 1.17 "Class"** means each category or group of Holders of Claims or Claims and Interests which has been designated as a class in Article II of the Plan.

**Section 1.18 "Class Representative Plaintiffs"** has the meaning ascribed to such term in the Receiver Settlement Agreement.

**Section 1.19 "Committee"** means the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases, as such committee may be reconfigured from time to time until the Effective Date.

**Section 1.20 "Confirmation"** means confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code, which shall occur on the Confirmation Date.

**Section 1.21 "Confirmation Date"** means the date upon which the Confirmation Order is entered on the docket maintained by the Bankruptcy Court pursuant to Bankruptcy Rule 5003.

**Section 1.22 "Confirmation Hearing"** means the hearing before the Bankruptcy Court at which the Plan is confirmed.

**Section 1.23 "Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, which shall be in form and substance acceptable to the Debtors, the Prepetition Collateral Agent, and the Committee.

**Section 1.24 "Consolidated Class Actions"** means Action No. 2:07-cv-00816-RCJ-LRL pending in the United States District Court for the District of Nevada entitled Howard J. Hawks Trust UTA Dated November 1, 1991 v. Qualified Exchange Services, Inc., et al. and Action No. CV07-02088 SJO VBK(x) pending in the United States District Court for the Central District of California entitled Sorrell v. Qualified Exchange Services, Inc., both of which have been coordinated or consolidated for pretrial purposes under Action No. 2:07-cv-01394-RCJ-LRL in the United States District Court for the District of Nevada entitled MDL No. 1878 – In re:

Internal Revenue Service §1031 Tax Deferred Exchange Litigation.

**Section 1.25 "Creditor"** has the meaning ascribed to such term in Section 101(10) of the Bankruptcy Code.

**Section 1.26 "Debtor"** and **"Debtors"** have the meaning set forth in the prefatory paragraph preceding Article I hereof.

**Section 1.27 "Debtor D&O Claims"** means any and all Litigation Claims asserted, or which may be asserted, of any kind or nature by or on behalf of the Debtors or the Debtors' Estates against past or present directors and officers of the Debtors (for avoidance of doubt, the foregoing shall not include any claims of the Senior Lenders, Receiver, Southwest Exchange Receivership Entities, Members of the Settlement Class, Class Representative Plaintiffs, and Opt-Out Individual Plaintiffs against past or present directors or officers of the Debtors and applicable insurances and insurers).

**Section 1.28 "Deficiency Claim"** means an unsecured Claim representing the amount, if any, by which the Allowed amount of the Claim exceeds the value of the property owned or held by the Debtors which collateralizes the Claim subject to a valid unavoidable security interest.

**Section 1.29 "Director/Officer Settlement"** means that certain compromise and settlement of the Debtor D&O Claims against certain directors and officers and related persons collectively, (the "Subject Persons") to wit, without limitation, Donald K. McGahn, Jim J. McGahn, Marc S. Sperberg, Thomas R. Moyes, Samuel Clay Rogers, Paul R. Kimmel, Eugene I. Davis, Mark E. Brown, Robert Forbuss, Thomas Y. Hartley, Ikram Kahn, Theodore R. Maloney, and certain insurers, to wit, Carolina Casualty Company, Inc. and RSUI Indemnity Company, (collectively the "Subject Insurers"), and Nikki Pomeroy and Shirley McGahn as Additional Settling Parties who are not Subject Persons, pursuant to which the Subject Insurers shall pay $275,000.00 (the "D&O Settlement Amount") to the Estates in a manner designated by the Committee for the account of the Liquidating Trust and by which the Subject Persons and Subject Insurers release claims, if any, against the Estates pursuant to that certain Wave V Settlement Agreement (the "D&O Settlement Agreement") by and among the Estates, acting by and through the Committee, the Subject Persons, the Subject Insurers, and certain other claimants against the Subject Persons and the Subject Insurers. The D&O Settlement Amount is not subject to the reimbursement rights and claims of the Prepetition Collateral Agent set forth in Section 6.6(i)(2) hereof.

**Section 1.30 "Disallowed"** means, when referring to a Claim, a Claim or any portion thereof, that has been (a) disallowed or expunged, in whole or part, by a Final Order, (b) withdrawn by agreement of the Debtors and the Holder thereof, in whole or in part, (c) withdrawn, in whole or in part, by the Holder thereof, (d) listed in the Schedules as zero or as Disputed, contingent or unliquidated and in respect of which a proof of claim has not been timely filed or deemed timely filed pursuant to the Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court or Stipulation with the Debtors, (e) reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any proof of claim or a reclassification or subordination thereof, or (f) evidenced by a proof of claim which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy

Court but as to which such proof of claim was not timely or properly filed. In each case a Disallowed Claim is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

**Section 1.31 "Disputed"** means any Claim (a) which is listed in the Schedules as disputed, contingent or unliquidated and for which a proof of claim has been timely filed pursuant to the Plan, the Bankruptcy Code, or any Final Order of the Bankruptcy Court, (b) which is objected to in whole or in part on or before the Claim Objection Deadline or for which a request for estimation has been Filed in accordance with the Bankruptcy Code and the Bankruptcy Rules and as to which no Final Order allowing or disallowing such Claim has been entered, or (c) for which a motion to approve a settlement of such Claim has been Filed in accordance with the Bankruptcy Code and the Bankruptcy Rules and as to which no Final Order approving or disapproving such settlement has been entered. To the extent an Objection relates to the allowance of only part of a Claim, such Claim shall be Disputed only to the extent of the Objection.

**Section 1.32 "Disputed Administrative, Priority Tax and Priority Non-Tax Claims Reserve"** means the reserve established pursuant to Section 6.5(a)(2)of this Plan.

**Section 1.33 "Disputed General Unsecured Claims Reserve"** means the reserve established pursuant to Section 6.5(b)(3) of this Plan.

**Section 1.34 "Distributable Cash"** shall mean all remaining available Cash after (a) payment on or as soon as practicable after the Effective Date in accordance with Section 6.5(a) of this Plan of the (i) Allowed Priority Tax Claims, (ii) Allowed Administrative Expense Claims, (iii) Allowed Priority Non-Tax Claims, (iv) Litigation Fund Payment, and (iv) General Unsecured Cash Payment, and (b) the establishment of the (i) Disputed Administrative, Priority Tax and Priority Non-Tax Claims Reserve and (ii) the Plan Expense Reserve.

**Section 1.35 "Distribution"** means a delivery of Cash by the Debtors or the Liquidating Trustee to the Holders of Allowed Claims pursuant to the Plan, or with respect to Allowed Senior Lender Claims, to the Prepetition Collateral Agent for delivery to the Holders of Allowed Senior Lender Claims.

**Section 1.36 "Distribution Date"** means the date on which a Distribution is made under the Plan.

**Section 1.37 "Distribution Record Date"** means the Confirmation Date.

**Section 1.38 "Effective Date"** means the first Business Day that is fourteen (14) days after the later of the date on which (a) all conditions in Section 9.1 of the Plan have been satisfied or waived in accordance with that Section and (b) no stay of the Confirmation Order is in effect; provided, however, the Effective Date may occur on such other date agreed to in writing by the Debtors, the Prepetition Collateral Agent and the Committee.

**Section 1.39 "Equity Interest"** means any ownership interest in any of the Debtors, including but not limited to, an interest in any issued, unissued, authorized or outstanding preferred shares or common shares with any or no designation, options, warrants, any securities convertible with

common shares or preferred shares, contractual right to purchase or acquire such interests at any time and all rights (including unpaid dividends) arising with respect thereto.

**Section 1.40 "Entity"** has the meaning ascribed to such term in Section 101(15) of the Bankruptcy Code.

**Section 1.41 "Estates"** means the estates of the Debtors created by Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases on the Petition Date.

**Section 1.42 "Eurosilicone Escrow Funds"** means the funds held in the escrow account previously established to hold the net proceeds from the sale of the Debtors' subsidiary Eurosilicone SAS pursuant to order of the Bankruptcy Court.

**Section 1.43 "Filed"** means filed with the Clerk of the Bankruptcy Court in the Chapter 11 Cases.

**Section 1.44 "Final Distribution Date"** means the date on which all Distributions shall have been made in accordance with this Plan.

**Section 1.45 "Final Order"** means an unstayed order, ruling or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or request for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors (prior to the Effective Date) or the Liquidating Trustee (on or after the Effective Date), or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order, shall not cause such order not to be a Final Order.

**Section 1.46 "General Unsecured Cash Payment"** means the payment of Cash in the amount of $700,000.00 to the Liquidating Trust as described in Section 6.5(a)(5) of this Plan which shall be used exclusively to fund Pro Rata Distribution(s) to Holders of Allowed General Unsecured Claims as beneficiaries of the Liquidating Trust.

**Section 1.47 "General Unsecured Claim"** means a Claim against a Debtor that is not a Priority Tax Claim, Administrative Expense Claim, Priority Non-Tax Claim, Senior Lender Secured Claim, Senior Lender Deficiency Claim, Southwest Exchange Claim, Interdebtor Claim, Non-Debtor Subsidiary Claim, Equity Interest or Stock Claim.

**Section 1.48 "General Unsecured Creditor Litigation Proceeds"** has the meaning ascribed to such term in Section 6.6(i)(3) of this Plan.

**Section 1.49** **"Governmental Unit"** has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

**Section 1.50** **"Holder"** means an Entity holding a Claim or Equity Interest.

**Section 1.51** **"Impaired"** means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

**Section 1.52** **"Initial Distribution Date"** means the date that the Liquidating Trustee makes the first Distribution of Liquidating Trust Assets to the Holders of Allowed General Unsecured Claims in accordance with Section 6.5(b)(4) of this Plan.

**Section 1.53** **"Insider"** has the meaning ascribed to such term in Section 101(31) of the Bankruptcy Code.

**Section 1.54** **"Interdebtor Claim"** means any Claim by a Debtor against another Debtor.

**Section 1.55** **"Interim Distribution Date"** means each date, subsequent to the Initial Distribution Date and until the Final Distribution Date, that the Liquidating Trustee makes a Distribution of Liquidating Trust Assets in accordance with this Plan.

**Section 1.56** **"Lien"** means a lien as defined in Section 101(37) of the Bankruptcy Code on or against the Assets of the Debtor(s).

**Section 1.57** **"Liquidating Trust"** means the liquidating trust described in Section 6.6 of this Plan and the Liquidating Trust Agreement.

**Section 1.58** **"Liquidating Trust Agreement"** means the agreement(s) establishing and delineating the terms and conditions of the Liquidating Trust, substantially in the form included in the Plan Supplement.

**Section 1.59** **"Liquidating Trust Assets"** means the Assets described in Section 6.6(b) of this Plan.

**Section 1.60** **"Liquidating Trust Board"** means the board of trustees of the Liquidating Trust as implemented hereunder and under the Liquidating Trust Agreement.

**Section 1.61** **"Liquidating Trust Expense Reserve"** means the reserve established by the Liquidating Trustee to hold funds as are reasonably necessary for the Trust to satisfy the expenses of administering the Liquidating Trust, including, without limitation, the Liquidating Trustee's reasonable professional fees and expenses, in respect of the claims reconciliation process, the prosecution, negotiation and settlement of the Litigation Claims and the making of Distributions by the Liquidating Trustee under this Plan, provided, however, that such funds shall not be used for the satisfaction of any other expenses, including the payment of U.S. Trustee fees.

**Section 1.62** **"Liquidating Trust Protected Parties"** shall have the meaning set forth in Section 10.5 of this Plan.

**Section 1.63** **"Liquidating Trustee"** means the Person or Persons appointed by the Creditors' Committee in accordance with this Plan and the Liquidating Trust Agreement to administer the Liquidating Trust, the Disputed General Unsecured Claims Reserve and the Liquidating Trust Expense Reserve.

**Section 1.64** **"Litigation Claims"** means any and all claims and causes of action of any kind or nature asserted, or which may be asserted, by or on behalf of the Debtors or the Debtors' Estates arising under federal or state law which have not been released pursuant to this Plan or separate order of the Bankruptcy Court, including, but not limited to, the Debtor D&O Claims and any and all claims arising under or pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, whether or not litigation has been commenced with respect to such causes of action as of the Effective Date, which shall be transferred to the Liquidating Trust upon the Effective Date as set forth in Section 6.5(a)(4) of this Plan.

**Section 1.65** **"Litigation Fund Payment"** means the sum of $100,000.00, which the Debtors shall deliver to the Liquidating Trust for the purpose of funding the Liquidating Trust Expense Reserve as described in Section 6.5(a)(5) of this Plan.

**Section 1.66** **"Litigation Proceeds"** means the proceeds of any or all of the Litigation Claims recovered by the Liquidating Trust in accordance with this Plan, except that Litigation Proceeds shall not include the D&O Settlement Amount, which is payable only: (i) to holders of Allowed General Unsecured Claims, and (ii) on account of Liquidating Trust fees and expenses as set forth in Section 6.6(i)(2) of this Plan.

**Section 1.67** **"Litigation Proceeds Reserve"** means the reserve established by the Liquidating Trustee to hold the Litigation Proceeds prior to Distribution as described in Section 6.5(b)(5) of this Plan.

**Section 1.68** **"Members of the Settlement Class"** has the meaning ascribed to such term in the Receiver Settlement Agreement.

**Section 1.69** **"Non-Debtor Subsidiary"** means any and all direct and/or indirect subsidiaries, whether active or inactive, of MediCor that have not filed a Chapter 11 Case.

**Section 1.70** **"Non-Debtor Subsidiary Claims"** means the Claims of any Non-Debtor Subsidiary against any Debtor.

**Section 1.71** **"Objection"** means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Expense Claim).

**Section 1.72** **"Opt-Out Individual Plaintiffs"** has the meaning ascribed to such term in the Receiver Settlement Agreement.

**Section 1.73** **"Person"** has the meaning ascribed to such term in Section 101(41) of the Bankruptcy Code.

**Section 1.74** **"Petition Date"** means June 29, 2007.

**Section 1.75** **"PIP PMA"** means the Assets associated with the Debtors' pre-market approval application with the United States Food and Drug Administration to market and distribute certain pre-filled saline breast implants manufactured by Poly Implant Protheses, S.A. in the United States.

**Section 1.76** **"Plan"** has the meaning specified in the prefatory paragraph preceding Article I.

**Section 1.77** **"Plan Expense Reserve"** means one or more reserves of Cash established by the Debtors pursuant to Section 6.5(a)(3) of this Plan, and subject to the advance approval of the Prepetition Collateral Agent, in such amounts to adequately fund the administration of the Plan and the winding-down and closing of the Chapter 11 Cases on and after the Effective Date and to be used by the Debtors, in consultation with the Prepetition Collateral Agent, to pay the fees and expenses incurred in the course of implementing the Plan, including, but not limited to, U.S. Trustee fees, unpaid professional fees, and unpaid taxes and to pay insurance and other expenses incurred in the ordinary course of business in maintaining and disposing of the remaining Assets of the Debtors (but not including the fees and expenses to be funded from the Liquidating Trust Expense Reserve).

**Section 1.78** **"Plan Supplement Filing Date"** means the date, which shall be at least ten (10) days prior to the Voting Deadline, on which certain exhibits and schedules to the Plan shall be filed with the Bankruptcy Court.

**Section 1.79** **"Prepetition Collateral Agent"** means Silver Oak Capital, L.L.C. as collateral agent for the Senior Lenders pursuant to the Securities Purchase Agreement.

**Section 1.80** **"Priority Claims"** means all Priority Tax Claims and Priority Non-Tax Claims.

**Section 1.81** **"Priority Non-Tax Claim"** means a Claim or a portion of a Claim for which priority is asserted under Sections 507(a)(3), (4), (5), (6) or (7) of the Bankruptcy Code.

**Section 1.82** **"Priority Tax Claim"** means a Claim or a portion of a Claim for which priority is asserted under Sections 507(a)(8) of the Bankruptcy Code.

**Section 1.83** **"Professional Fee Bar Date"** means the date set forth in Section 3.3(b) herein.

**Section 1.84** **"Professionals"** means the professionals retained by the Debtors or the Committee under Sections 327 or 1103 of the Bankruptcy Code or to be compensated pursuant to Sections 327, 328, 330, 331, 503(b)(2) or (4) or 1103 of the Bankruptcy Code.

**Section 1.85** **"Pro Rata"** means the proportion that the Allowed Claim in a particular Class bears to the aggregate amount of (a) Allowed Claims in such Class as of the date of determination, plus (b) Disputed Claims (in their aggregate face amounts or such other amounts as may be estimated) in such Class as of the date of determination, (i) as calculated by the Debtors or the Liquidating Trustee, as applicable, on or before the date of any such Distribution or (ii) as determined by an Estimation Order or Final Order of the Bankruptcy Court.

**Section 1.86 "QES"** means Qualified Exchange Services, Inc., and all of its past, present and future parents, subsidiaries, affiliates, successors, assigns, predecessors, member firms, related entities, divisions, and business units.

**Section 1.87 "Receiver"** means Larry Bertsch, as Receiver for the Southwest Exchange Receivership Entities.

**Section 1.88 "Receivership Action"** means Action 07-A-535439-B pending in the Eighth Judicial District Court of the State of Nevada in and for the County of Clark entitled <u>In re Receivership of Southwest Exchange, Inc. and Consolidated Litigation</u>.

**Section 1.89 "Receiver Adversary Proceedings"** means the adversary proceedings commenced by the Receiver in the Chapter 11 Cases entitled <u>Bertsch v. Medicor, Ltd., et al.</u>, Adv. Pro. No. 07-51806 (MFW), and <u>Bertsch v. Medicor, Ltd. et al.</u>, Adv. Pro. No. 08-50597 (MFW).

**Section 1.90 "Receiver Settlement Amount"** has the meaning ascribed to such term in Section 4.2 of this Plan.

**Section 1.91 "Receiver Settlement Agreement"** means that certain settlement agreement executed on November 30, 2009, among the Debtors, the Non-Debtors, the Receiver, the Lenders and the other parties thereto.

**Section 1.92 "Receiver Settlement Trustee"** has the meaning ascribed to the term "Settlement Trustee" in the Receiver Settlement Agreement.

**Section 1.93 "Reinstated"** means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code, (ii) reinstating the maturity of such Claim as such maturity existed before such default, (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law, (iv) if such Claim arises from any failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to Section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than the debtor or an insider) for any pecuniary loss incurred by such Holder as a result of such failure, and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder of such Claim.

**Section 1.94 "Rejection Claim"** means any Claim for amounts due as a result of the rejection by the Debtors of any executory contract or unexpired lease under Section 365 of the Bankruptcy Code.

**Section 1.95 "Remaining Assets"** means any assets or property of the Debtors remaining and vesting in the Debtors after transfer of the Liquidating Trust Assets to the Liquidating Trust.

**Section 1.96  "Reserves"** means the following reserves of Cash established pursuant to this Plan: (i) Disputed Administrative, Priority Tax and Priority Non-Tax Claims Reserve; (ii) the Plan Expense Reserve; (iii) the Disputed General Unsecured Claims Reserve; and (iv) the Liquidating Trust Expense Reserve.

**Section 1.97  "Secured Claim"** means, pursuant to Section 506 of the Bankruptcy Code, that portion of a Claim that is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtors in and to property of the Estate, to the extent of the value of the holder's interest in such property as of the relevant determination date, or (b) Allowed as such pursuant to the terms of the Plan (subject to the Confirmation Order becoming a Final Order).  The defined term Secured Claim includes any Claim that is (i) subject to an offset right under applicable law as of the Petition Date, and (ii) a secured claim against the Debtors pursuant to Sections 506(a) and 553 of the Bankruptcy Code.

**Section 1.98  "Securities Purchase Agreement"** means the securities purchase agreement dated April 26, 2006, among MediCor, the Prepetition Collateral Agent, and, as purchasers thereunder, Silver Oak Capital, L.L.C., HFTP Investment L.L.C., GAIA Offshore Master Fund, Ltd. and Portside Growth and Opportunity Fund, and the subsequent amendments thereto.

**Section 1.99** "**Senior Lender Claims**" means the Senior Lender Secured Claims and the Senior Lender Deficiency Claims.

**Section 1.100** "**Senior Lender Deficiency Claims**" means the Deficiency Claims of the Senior Lenders arising under and pursuant to the Senior Lender Notes, which are Allowed Deficiency Claims in the aggregate amount equal to the difference between (i) the Allowed Senior Lender Secured Claims, and (ii) the Distributable Cash actually applied to reduce the Senior Lender Secured Claims pursuant to Section 6.5(a)(6) of this Plan.

**Section 1.101 "Senior Lender Litigation Proceeds"** has the meaning ascribed to such term in Section 6.6(i)(3) of this Plan.

**Section 1.102 "Senior Lender Notes"** means the senior secured convertible notes in the original aggregate principal amount of $50 million issued pursuant to the Securities Purchase Agreement.

**Section 1.103 "Senior Lender Secured Claims**" means the Secured Claims of the Senior Lenders, arising under and pursuant to the Senior Lender Notes, which are Allowed Secured Claims in the aggregate amount of $57,071,384.00 pursuant to Section 2.3(a) of this Plan.

**Section 1.104** "**Senior Lenders**" means, collectively, Silver Oak Capital, L.L.C., Promethean II Master, L.P., Promethean I Master Ltd. (f/k/a/ GAIA Offshore Master Fund, Ltd.), Portside Growth and Opportunity Fund, and certain assigns and successors of HFTP Investment LLC, which has been dissolved, on behalf of themselves and their past and future assigns.

**Section 1.105  "Southwest Exchange Receivership Entities"** means: (i) SWX; (ii) QES; and (iii) all other entities that are, as of the Confirmation Date, the subject of a receivership in Action 07-A-535439-B in the Eighth Judicial District Court of the State of Nevada in and for the County

of Clark entitled "In Re: Receivership of Southwest Exchange, I*nc. and Consolidated Litigation,*" including, but not limited to, Blackstone Limited, LLC; International Integrated Industries, LLC; Sirius Capital, LLC; NexGen Management, Inc.; Americade, LLC; Global Aviation Delaware, LLC; McGhan Management Corp.; Global Asset Management; West Vegas, LP; Bianathar, LLC; Trinity Star Ventures, LLC; and Ventana Coast, LLC, and all of their past, present and future parents, subsidiaries, affiliates, successors, assigns, predecessors, member firms, related entities, divisions, and business units.

**Section 1.106 "Southwest Exchange Claim"** means a Claim held by: (a) the Receiver, any of the Southwest Exchange Receivership Entities, any other entity subject to the Receiver's control, or any Insider of such entities; (b) all persons and entities that (i) were customers of SWX or QES, (ii) directly or indirectly transferred any assets to or deposited any assets with SWX or QES, or (iii) directly or indirectly suffered any loss arising out of, in connection with, or in any way related to the failure of SWX or QES to make payments or transfers of assets to their customers; or (c) any beneficiary of the Receiver's asserted claims against any Debtor and/or any property of the Debtors' estates, any Non-Debtor Subsidiary and/or any property of a Non-Debtor Subsidiary, or any Senior Lender, including, without limitation, the claims asserted in the Receiver Adversary Proceedings, similar claims against such property, and/or claims against any Debtor or any Debtor estate, including any holder of a claim against any of the Southwest Exchange Receivership Entities, or any other entity subject to the Receiver's control, or any Insider of such entities or any entity claiming by or through the Receiver's estate. For avoidance of doubt, this definition shall not be construed to include a Claim held by the Senior Lenders.

**Section 1.107 "Southwest Exchange Settlement Orders"** means: (i) the Bankruptcy Settlement Order and (ii) Final Orders approving the settlement of the Southwest Exchange Claims on terms acceptable to the Debtors and the Prepetition Collateral Agent entered in (a) the Consolidated Class Actions, and (b) the Receivership Action.

**Section 1.108 "Stock Claim"** means any Claim with respect to an Equity Interest of the kind described in Section 510(b) of the Bankruptcy Code.

**Section 1.109** "**Subsidiary Debtor(s)**" means, individually or collectively, a Debtor or Debtors other than MediCor, as applicable.

**Section 1.110 "Surplus Distributions"** means the Distributions to be made pursuant to Section 6.5(b)(7) and Section 7.6 of this Plan.

**Section 1.111 "SWX"** means Southwest Exchange, Inc. or Southwest Exchange Corporation, and all of their past, present and future parents, subsidiaries, affiliates, successors, assigns, predecessors, member firms, related entities, divisions, and business units.

**Section 1.112 "Tax" or "Taxes"** means all income, gross receipts, sales, use, transfer, payroll, employment, franchise, profits, property, excise or other similar taxes, estimated import duties, fees, stamp taxes and duties, value added taxes, assessments or charges of any kind whatsoever (whether payable directly or by withholding), together with any interest and any penalties, additions to tax or additional amounts imposed by any taxing authority of a Governmental Unit with respect thereto.

**Section 1.113 "Tax Code"** means the Internal Revenue Code of 1986, as amended, modified or supplemented from time to time, and the rules and regulations promulgated thereunder.

**Section 1.114 "Unclaimed Distribution"** means the Distributions described in Section 7.7 of this Plan.

**Section 1.115 "Unclassified Claim"** means any Priority Tax Claim or Administrative Expense Claim.

**Section 1.116 "Unimpaired"** means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest, if any, that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

**Section 1.117 "U.S. Trustee Fees"** means fees payable pursuant to 28 U.S.C. § 1930.

**Section 1.118 "Voting Deadline"** means the deadline established by an order of the Bankruptcy Court for receipt of Ballots voting to accept or reject the Plan.

**Section 1.119 Rules of Interpretation**. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the Plan. In addition, for purposes of the Plan: (a) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter genders; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) unless otherwise specified, all references in the Plan to Subsections, Sections, Articles, Exhibits and Schedules are references to Subsections, Sections, Articles, Exhibits, and Schedules of or to the Plan; (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan.

**Section 1.120 Exhibits and Schedules.** All exhibits and schedules annexed hereto, or filed on or before the Plan Supplement Filing Date or otherwise are incorporated into and are a part of the Plan as if set forth in herein. Holders of Claims and Equity Interests may obtain copies of the filed exhibits and schedules upon written request to the Debtors. Upon their filing, the exhibits and schedules may be inspected in the Office of the Clerk of the Bankruptcy Court or its designee during normal business hours. The documents contained in the exhibits and schedules shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

**Section 1.121 Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

**Section 2.1** All Claims and Equity Interests, except Priority Tax Claims and Administrative Expense Claims, are placed in the Classes set forth below. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Priority Tax Claims and Administrative Expense Claims, as described herein, have not been classified. The Plan constitutes a single plan of liquidation for

all Debtors. A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled prior to the Effective Date.

| **Class** | **Status** | **Voting Rights** |
|---|---|---|
| Class 1 (Priority Non-Tax Claims) | Unimpaired | Not entitled to Vote - Deemed to accept Plan |
| Class 2 (Southwest Exchange Claims) | Unimpaired | Not entitled to Vote - Deemed to accept Plan |
| Class 3 (Senior Lender Secured Claims) | Impaired | Entitled to Vote |
| Class 4 (Senior Lender Deficiency Claims) | Impaired | Entitled to Vote |
| Class 5 (General Unsecured Claims) | Impaired | Entitled to Vote |
| Class 6 (Interdebtor Claims) | Impaired | Not entitled to Vote - Deemed to reject Plan |
| Class 7 (Non-Debtor Subsidiary Claims) | Impaired | Not entitled to Vote - Deemed to reject Plan |
| Class 8 (Equity Interests and Stock Claims) | Impaired | Not entitled to Vote - Deemed to reject Plan |

**Section 2.2      Unimpaired Classes of Claims.**

(a)      **Class 1: Priority Non-Tax Claims.**  Class 1 shall consist of Allowed Claims entitled to priority under Sections 507(a)(3), (4), (5), (6) or (7) of the Bankruptcy Code. Class 1 Claims are Unimpaired by the Plan and the Holders of Allowed Class 1 Claims are deemed to accept the Plan and, therefore, are not entitled to vote on the Plan.

(b)      **Class 2: Southwest Exchange Claims.**  Class 2 consists of all Southwest Exchange Claims.  Assuming the Southwest Exchange Settlement Orders are obtained and the Receiver Settlement Amount is paid to the Receiver Settlement Trustee, all Class 2 Claims will be deemed withdrawn or expunged.  In such event, Class 2 Claims will be unimpaired by the Plan and Holders of Class 2 Claims will be deemed to accept this Plan and, therefore, will not entitled to vote on the Plan.

**Section 2.3** **Impaired Classes of Claims**.

      **(a)** **Class 3: Senior Lender Secured Claims.** Class 3 shall consist of the Senior Lender Secured Claims which are Allowed Secured Claims under and pursuant to this Plan in the aggregate amount of $57,071,384.00. Class 3 Claims are Impaired by the Plan, and the Holders of Class 3 Claims are entitled to vote on the Plan.

      **(b)** **Class 4: Senior Lender Deficiency Claims.** Class 4 shall consist of the Senior Lender Deficiency Claims. Class 4 Claims are Impaired by the Plan, and the Holders of Class 4 Claims are entitled to vote on the Plan.

      **(c)** **Class 5: General Unsecured Claims.** Class 5 shall consist of all General Unsecured Claims. Class 5 Claims are Impaired by the Plan and the Holders of Class 5 Claims are entitled to vote on the Plan.

      **(d)** **Class 6: Interdebtor Claims.** Class 6 shall consist of all Interdebtor Claims. Because Class 6 Claims are to receive no Distributions under the Plan, Holders of Class 6 Claims are deemed to reject the Plan and, therefore, are not entitled to vote on the Plan.

      **(e)** **Class 7: Non-Debtor Subsidiary Claims.** Class 7 shall consist of all Non-Debtor Subsidiary Claims. Because Class 7 Claims are to receive no Distributions under the Plan, Holders of Class 7 Claims are deemed to reject the Plan and, therefore, are not entitled to vote on the Plan.

**Section 2.4** **Impaired Class of Equity Interests and Stock Claims.**

      **(a)** **Class 8: Equity Interests and Stock Claims.** Class 8 shall consist of Equity Interests and Common Stock Claims. Because Class 8 Interests and Claims are to receive no Distributions under the Plan, Holders of Class 8 Equity Interests and Stock Claims are deemed to reject the Plan and, therefore, are not entitled to vote on the Plan.

**ARTICLE III.**
**TREATMENT OF UNCLASSIFIED CLAIMS**

**Section 3.1** **Unclassified Claims.** Unclassified Claims are Unimpaired by the Plan. Each Holder of an Unclassified Claim is conclusively presumed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan. The following are the unclassified Claims: Priority Tax Claims and Administrative Expense Claims.

**Section 3.2** **Priority Tax Claims.** The legal and equitable rights of the Holders of Allowed Priority Tax Claims are Unimpaired by the Plan. Within the time period provided in Section 6.5(a)(1) of this Plan, each Holder of an Allowed Priority Tax Claim shall receive from the Debtors in full satisfaction, settlement and release of and in exchange for such Allowed Priority Tax Claim: (a) Cash equal to the amount of such Allowed Priority Tax Claim; or (b) such other treatment as to which the Debtors, in consultation with the Prepetition Collateral Agent, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.

**Section 3.3     Administrative Expense Claims.**  The legal and equitable rights of the Holders of Allowed Administrative Expense Claims are Unimpaired by the Plan.  Within the time period provided in Section 6.5(a)(1) of this Plan, each Holder of an Allowed Administrative Expense shall receive from the Debtors in full satisfaction, settlement and release of and in exchange for such Allowed Administrative Expense Claim: (a) Cash equal to the amount of such Allowed Administrative Expense Claim; or (b) such other treatment as to which the Debtors, in consultation with the Prepetition Collateral Agent, and the Holder of such Allowed Administrative Expense Claim shall have agreed upon in writing.

        **(a)     Bar Date for Administrative Expense Claims.**     Holders of Administrative Expense Claims other than the kind specified in Section 3.3(b) hereof shall file with the Bankruptcy Court and serve on the Debtors and counsel to the Prepetition Collateral Agent requests for payment on or before the thirtieth (30th) day after the Confirmation Date (the "Administrative Expense Bar Date") or forever be barred from submitting any request on account of such Administrative Expense Claim.  The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth such date and shall constitute notice of this Administrative Expense Bar Date.  The Debtors and the Prepetition Collateral Agent shall have thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Expense Bar Date to review and object to such Administrative Expense Claims.

        **(b)     Bar Date for Applications for Professional Fees.**  All applications for allowance and payment of professional fees for services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases prior to the Effective Date are Administrative Expense Claims and shall be filed with the Bankruptcy Court within sixty (60) days after the Confirmation Date (the "Professional Fee Bar Date").  Any such application not filed within sixty (60) days after the Confirmation Date shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof.  The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth such date and shall constitute notice of this Professional Fee Bar Date.  The Debtors, the Professionals, the Liquidating Trustee and the Prepetition Collateral Agent shall have thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Professional Fee Bar Date to review and object to such applications for professional fees for services rendered and reimbursement of expenses incurred.

**Section 3.4     U.S. Trustee Fees.**  All unpaid U.S. Trustee Fees shall be timely paid by the Debtors in the ordinary course as such U.S. Trustee Fees become due and payable.

## ARTICLE IV.
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

        Unless the Holder of an Allowed Claim and the applicable Debtor(s), in consultation with the Prepetition Collateral Agent, agree to a different treatment, on the Effective Date, or as soon as practicable after the Effective Date, each Holder of an Allowed Claim shall receive as follows:

**Section 4.1     Class 1: Priority Non-Tax Claims.**  Within the time period provided in Section

6.5(a)(1) of this Plan, each Holder of an Allowed Priority Non-Tax Claim shall receive from the Debtors: (A) Cash equal to the amount of such Allowed Priority Non-Tax Claim; or (B) such other treatment which the Debtors, in consultation with the Prepetition Collateral Agent, and the Holder of such Allowed Priority Non-Tax Claim have agreed upon in writing.

**Section 4.2    Class 2: Southwest Exchange Claims.**  Assuming the Southwest Exchange Settlement Orders are obtained, including the Bankruptcy Settlement Order, and $3,950,000.00 (the "Receiver Settlement Amount") is paid to the Receiver as Receiver Settlement Trustee, all Southwest Exchange Claims will be deemed fully settled and satisfied.  In consideration for the receipt of the benefit of the settlement pursuant to the Bankruptcy Settlement Order and this Plan, all such Claims will be deemed to have been withdrawn and expunged and the claimants with respect to such Claims will not be entitled to receive any Distribution or payments of any kind on account of such Claims under this Plan.

**Section 4.3    Class 3: Senior Lender Secured Claims.**  Within the time period provided in Section 6.5(a)(6) of this Plan, the Debtors shall deliver the Distributable Cash to the Prepetition Collateral Agent for Pro Rata Distribution to each of the Holders of Allowed Senior Lender Secured Claims.

**Section 4.4    Class 4: Senior Lender Deficiency Claims.**  At the times and in the manner provided in Section 6.5(b) and Article VII of this Plan, the Liquidating Trustee shall deliver the Senior Lender Litigation Proceeds and the proceeds of the PIP PMA received from the Liquidating Trust pursuant to Section 6.6(i) of this Plan, if any, to the Prepetition Collateral Agent for Pro Rata Distribution to each of the Holders of Allowed Senior Lender Deficiency Claims.  No Holder of Class 4 Claims shall receive any share or part of the D&O Settlement Amount.

**Section 4.5    Class 5: General Unsecured Claims.**  At the times and in the manner provided in Section 6.5(b) and Article VII of this Plan, the Liquidating Trustee shall distribute to each Holder of an Allowed General Unsecured Claim: (i) its Pro Rata share of the General Unsecured Cash Payment; (ii) its Pro Rata share of the D&O Settlement Amount (subject to Section 6.6(i)(2) of this Plan); and (iii) its Pro Rata share of the General Unsecured Creditor Litigation Proceeds (subject to Section 6.6(i)(2) of this Plan) and the proceeds of the PIP PMA received from the Liquidating Trust pursuant to Section 6.6(i) of this Plan, if any(subject to Section 6.6(i)(2) of this Plan); provided, however, that no Holder of an Allowed General Unsecured Claim shall be entitled to receive more than the full amount of such Allowed Claim.

**Section 4.6    Class 6: Interdebtor Claims.**  There shall be no Distribution or payments of any kind to the Holders of Interdebtor Claims.

**Section 4.7    Class 7: Non-Debtor Subsidiary Claims.**  There shall be no Distribution or payments of any kind to the Holders of Non-Debtor Subsidiary Claims.

**Section 4.8    Class 8: Equity Interests and Stock Claims.**  On the Effective Date, all Equity Interests shall be deemed canceled and of no force or effect, and the Holders of Stock Claims shall not be entitled to receive or retain any property on account of such Claims.  Without limiting the generality of the foregoing, all rights or Claims of any Holders of Equity Interests

with respect to dividends, distributions, voting rights, liquidation preferences or presumptive rights to subscribe for securities, or other rights or Claims with respect to such Equity Interests, whether arising under applicable law, certificate(s) of incorporation, agreement or otherwise, also shall be deemed extinguished, canceled and of no force or effect as of the Effective Date. There shall be no Distribution or payment of any kind to Holders of Equity Interests or Stock Claims.

**Section 4.9    Special Provision Regarding Unimpaired Claims.**    Except as otherwise explicitly provided in the Plan, nothing shall affect the Debtors' rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

**ARTICLE V.**
**ACCEPTANCE OR REJECTION OF THE PLAN**

**Section 5.1    Classes Entitled to Vote.**    Because Claims in Classes 3, 4 and 5 are Impaired and Holders thereof will receive or retain property or an interest in property under the Plan, Holders of Claims in Classes 3, 4 and 5 shall be entitled to vote to accept or reject the Plan.  Because Claims in Classes 1 and 2 are Unimpaired, pursuant to Section 1126(f) of the Bankruptcy Code, Classes 1 and 2 are deemed to have accepted the Plan and, therefore, Holders of Claims in Classes 1 and 2 are not entitled to vote to accept or reject the Plan.  Because Holders of Claims in Classes 6 and 7 and Holders of Equity Interests and Stock Claims in Class 8 are not entitled to receive or retain any property under the Plan, pursuant to Section 1126(g) of the Bankruptcy Code, Classes 6, 7 and 8 are presumed to have rejected the Plan and, therefore, Holders of Class 6, 7 and 8 Claims and Interests are not entitled to vote on the Plan.

**Section 5.2    Acceptance by Impaired Classes of Claims.**    An Impaired Class of Claims which is entitled to vote shall have accepted the Plan if (a) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**Section 5.3    Cramdown.**    The Debtors will request Confirmation of the Plan, as it may be modified from time to time, under Section 1129(b) of the Bankruptcy Code with respect to Classes 6, 7 and 8, which are deemed to have rejected the Plan.  In addition, if any other Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite majorities provided in Section 1126(c) of the Bankruptcy Code, as applicable, the Debtors reserve the right to request that the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code as to any such rejecting Class.  The Debtors, in consultation with the Prepetition Collateral Agent, reserve the right to modify the Plan to the extent, if any, that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification or for any other reason in their discretion.

**Section 5.4    Controversy Concerning Impairment**. If a controversy arises as to whether any

Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE VI.
## MEANS OF IMPLEMENTING THE PLAN

**Section 6.1    Implementation on the Effective Date.**  The Plan shall be implemented on the Effective Date.

**Section 6.2    Substantive Consolidation of Debtors.**  On the Effective Date, the Estates of MediCor Ltd., International Integrated Incorporated, International Integrated USA Incorporated, MediCor Management, Inc., MediCor Development Company, MediCor Aesthetics, III Acquisition Corporation d/b/a PIP.America, and Intellectual Property International, Inc. shall be deemed to be substantively consolidated solely for purposes of voting on, and making Distributions under, the Plan, and (i) all assets and liabilities of the Debtors shall be deemed to be merged, (ii) each obligation of any Debtor shall be deemed to be an obligation of all of the Debtors, (iii) a Claim against any one of the Debtors shall be deemed to be a Claim against all of the Debtors for all purposes, including, but not limited to, Distributions as provided under the Plan, (iv) each Claim filed in the Chapter 11 Case of any Debtor shall be deemed to be filed against all of the Debtors in accordance with the substantive consolidation of the assets and liabilities of the Debtors, (v) all transfers, disbursements and distributions made by any Debtor shall be deemed to be made by all of the Debtors and (vi) all Interdebtor Claims of the Debtors shall be canceled and deemed satisfied.  Holders of Allowed Claims in each Class established pursuant to the Plan shall be entitled to the treatment set forth in the Plan for such Class without regard to which Debtor was originally liable for such Claim.  Such substantive consolidation shall not (other than for the foregoing purposes) affect the legal and corporate structure of the Debtors.  Notwithstanding such substantive consolidation, each Debtor shall be responsible for the payment of U.S. Trustee fees until such Debtor's Chapter 11 Case is closed.

**Section 6.3    Process for Orderly Wind Up of the Debtors' Estates, Consummation of Plan and Closing of Estates.**

(a)    From and after the Confirmation Date, the Debtors shall continue in existence for the limited purpose of (i) winding up their affairs as expeditiously as reasonably possible, (ii) liquidating, by conversion to Cash or other methods, any remaining assets of their Estates, as expeditiously as reasonably possible, (iii) administering the Plan, (iv) filing appropriate tax returns, and (v) dissolving or otherwise finally resolving their affairs.

(b)    From and after the Confirmation Date, and subject to the occurrence of the Effective Date, the Debtors may, in consultation with the Prepetition Collateral Agent, but without further judicial review or order of the Court, use, sell, assign, transfer, abandon or otherwise dispose of at a public or private sale any of the Remaining Assets for the purpose of liquidating and converting such Assets to Cash, making Distributions and fully consummating the Plan.  Any proceeds obtained from the liquidation or conversion of the Remaining Assets shall be deemed to be Distributable Cash and shall be transferred to the Prepetition Collateral Agent for Distribution Pro Rata to the Holders of Allowed Senior Lender Secured Claims in accordance with the provisions of this Plan and the Confirmation Order.  The Debtors may retain

additional professionals (including any professional retained in the Chapter 11 Cases) to assist them in their duties at the expense of the Debtors with the consent of the Prepetition Collateral Agent.

**(c)** The Debtors shall be authorized to perform all actions required to consummate the Plan and for closing of the Chapter 11 Cases, including but not limited to the filing of any post-confirmation tax returns that may be required and applying for a final decree pursuant to Section 350 of the Bankruptcy Code.

**Section 6.4** **Funding for the Plan.** The Plan will be funded from the Debtors' available Cash, the Eurosilicone Escrow Funds and the Biosil Escrow Funds. The Debtors' available Cash, the Eurosilicone Escrow Funds and the Biosil Escrow Funds are the cash collateral of the Senior Lenders, and the Senior Lenders have agreed to carve out and forgo a portion of their recovery on account of the Allowed Senior Lender Secured Claims in order to transfer the General Unsecured Cash Payment, the Litigation Fund Payment, and the Distribution of the General Unsecured Creditors' Litigation Proceeds to the Liquidating Trust for the benefit of Holders of Allowed General Unsecured Claims on the terms set forth in this Plan.

**Section 6.5** **Timing of Distributions and Establishment of Reserves.**

**(a)** **Transfers by the Debtors.**

1. The Debtors shall pay each Allowed Administrative Expense Claim, Allowed Priority Non-Tax Claim and Allowed Priority Tax Claim, on the later of (i) the Effective Date of this Plan, (ii) the date on which such a Claim becomes an Allowed Claim by Final Order or by agreement of the parties or as soon as reasonably practicable thereafter, (iii) the date on which, in the ordinary course of business, such Allowed Claim becomes due, or (iv) on such other date as may be agreed upon between the Debtors, in consultation with the Prepetition Collateral Agent, and the Holder of such Allowed Claim.

2. On the Effective Date of this Plan and prior to making any Distributions, the Debtors shall establish the Disputed Administrative, Priority Tax and Priority Non-Tax Claims Reserve and shall transfer thereto the amount of Cash as deemed necessary by the Debtors, with the consent of the Prepetition Collateral Agent, to fund the Disputed Administrative, Priority Tax and Priority Non-Tax Claims Reserve.

3. On the Effective Date of this Plan and prior to making any Distributions, the Debtors shall establish the Plan Expense Reserve and shall transfer thereto the amount of Cash as deemed necessary by the Debtors, with the consent of the Prepetition Collateral Agent, to fund the Plan Expense Reserve.

4. On the Effective Date of this Plan, the Debtors shall transfer the Litigation Claims and the PIP PMA to the Liquidating Trust.

5. On the Effective Date of this Plan, (i) the Prepetition Collateral Agent shall be deemed to have carved out from its Cash Collateral and deemed to have authorized the Debtors to transfer and the Debtors shall transfer to the Liquidating Trustee: (a) the General Unsecured Cash Payment, and (b) the Litigation Fund Payment and, (ii) as may be necessary, the

Debtors and/or the Committee shall facilitate the transfer of any Litigation Proceeds, including, without limitation, the D&O Settlement Amount, if received or collected prior to the Effective Date, to the Liquidating Trust.  The Debtors and the Senior Lenders shall have no further obligation to provide any funding to pay the expenses of the Liquidating Trust or otherwise, other than making the Litigation Fund Payment.

6.      On the Effective Date of the Plan and after making the transfers set forth in this Section 6.5(a)(1)-(5) above, the Debtors shall transfer all remaining Distributable Cash to the Prepetition Collateral Agent for Distribution Pro Rata to the Holders of Allowed Senior Lender Secured Claims in accordance with the provisions of this Plan and the Confirmation Order.

**(b)      Transfers by the Liquidating Trustee, Receipt of D&O Settlement Amount.**

1.      As soon as reasonably practicable but not to exceed five (5) days after the receipt of the Litigation Fund Payment from the Debtors, the Liquidating Trustee shall establish the Liquidating Trust Expense Reserve and transfer the Litigation Fund Payment to the Liquidating Trust Expense Reserve.

2.      The Committee designates the Liquidating Trust to receive the D&O Settlement Amount and the Liquidating Trustee may receive such D&O Settlement Amount pursuant to this Plan in the Liquidating Trust.

3.      As soon as reasonably practicable but not to exceed one hundred twenty (120) days after the receipt of the General Unsecured Cash Payment from the Debtors, the Liquidating Trustee shall establish the Disputed General Unsecured Claims Reserve and shall transfer thereto the amount of Cash necessary to fund the Disputed General Unsecured Claims Reserve from the General Unsecured Cash Payment, as calculated pursuant to Section 7.4 of this Plan.

4.      As soon as reasonably practicable but not to exceed one hundred eighty (180) days after the establishment of the Disputed General Unsecured Claims Reserve, the Liquidating Trustee shall distribute the balance of the General Unsecured Cash Payment Pro Rata to the Holders of Allowed General Unsecured Claims in accordance with the provisions of this Plan and the Confirmation Order.

5.      Upon the receipt of any Litigation Proceeds, the Liquidating Trustee shall establish the Litigation Proceeds Reserve and transfer the Litigation Proceeds to the Litigation Proceeds Reserve, subject to the payment of the reasonable fees and expenses of the Liquidating Trustee as set forth in Section 6.6(i)(2) of this Plan.

6.      On each of the Interim Distribution Dates and the Final Distribution Date, subject to the making of appropriate reserves in respect of Litigation Claims, including anticipated fees and expenses necessary in the Liquidating Trustee's discretion to prosecute or otherwise dispose of other Litigation Claims, out of the Litigation Proceeds, the Liquidating Trustee shall distribute the Litigation Proceeds to the Holders of Allowed General Unsecured Claims and the Prepetition Collateral Agent pursuant to the formula set forth in Section

6.6(i)(3)of this Plan; provided, however, that in no event shall the aggregate distributions to a Holder of an Allowed Claim exceed the full amount of such Allowed Claim. To the extent that the Allowed General Unsecured Claims are satisfied in full, the Litigation Proceeds shall thereafter be paid to the Prepetition Collateral Agent for Distribution Pro Rata to the Holders of Allowed Senior Lender Deficiency Claims.

7. On each of the Interim Distribution Dates and the Final Distribution Date, the Liquidating Trustee shall distribute the Surplus Distributions to Holders of Allowed General Unsecured Claims on a Pro Rata basis if the Liquidating Trustee deems such a distribution to be efficient and practicable.

8. Notwithstanding the foregoing, nothing in this Plan or the Confirmation Order, or any related document, agreement, instrument or order shall prohibit the Liquidating Trustee from using Litigation Proceeds and other reserve amounts to fund Liquidating Trust Expenses. The Liquidating Trustee may file a motion to extend any deadlines for the making of Distributions or reserves hereunder prior to the occurrence of any such deadlines, which are automatically extended after the filing of such motion pending the entry of an order by the Bankruptcy Court extending any subject deadline.

(c) **Transfers of Remaining Assets and Residual Liquidating Trust Funds.**

1. Any Cash remaining in the Plan Expense Reserve or the Disputed Administrative, Priority Tax and Priority Non-Tax Claims Reserve, after all Disputed Administrative, Priority Tax and Priority Non-Tax Claims have been resolved and the costs of the Debtors have been fully paid, shall be paid to the Prepetition Collateral Agent for Distribution Pro Rata to the Holders of Allowed Senior Lender Secured Claims in accordance with the provisions of this Plan and the Confirmation Order.

2. Except as otherwise provided for in this Plan, upon the dissolution of the Liquidating Trust after the final Distributions to the beneficiaries of the Liquidating Trust are made, any Cash remaining in the Liquidating Trust Expense Reserve or the Litigation Proceeds Reserve shall be deemed to be Litigation Proceeds and shall be distributed in accordance with the provisions of this Plan and the Confirmation Order. If there are any residual Unclaimed Distributions at the time of such dissolution, such residual Unclaimed Distributions shall be paid to the Prepetition Collateral Agent Pro Rata on behalf of the Senior Lenders, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.

**Section 6.6    The Liquidating Trust.**

(a) **Execution of the Liquidating Trust Agreement.** The Debtors and/or the Committee, on their own behalf and on behalf of the Holders of Allowed Claims in Classes 4 and 5, shall execute the Liquidating Trust Agreement on the Effective Date and shall take all other steps necessary to establish the Liquidating Trust. In the event of any conflict between the terms of this Section 6.6 and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall govern.

**(b)     Vesting of Assets**.   Upon the Effective Date, the Debtors and/or the Committee shall transfer or cause to be transferred to the Liquidating Trust: (i) all of their rights, title, and interests in the Litigation Claims and the proceeds thereof, (ii) the D&O Settlement Amount and all of their rights, title, and interests in the D&O Settlement Agreement, (iii) at the deemed direction of the Prepetition Collateral Agent as a carve-out from the Senior Lenders' cash collateral hereunder, the General Unsecured Cash Payment, (iii) at the deemed direction of the Prepetition Collateral Agent as a carve-out from the Senior Lenders' cash collateral hereunder, the Litigation Fund Payment, and (iv) all of their rights, title, and interests in the PIP PMA and the proceeds thereof (collectively, the "Liquidating Trust Assets") and title to the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Liens, Claims and Interests, except as expressly provided in this Plan.  The Liquidating Trust shall be a grantor trust and shall be assumed to have no tax liabilities.  The Liquidating Trustee shall liquidate and distribute the Liquidating Trust Assets in accordance with the terms of the Liquidating Trust Agreement and this Plan.  The Debtors shall execute any and all documents necessary to transfer and convey all of the Liquidating Trust Assets to the Liquidating Trust on the Effective Date.

**(c)     Purpose of Liquidating Trust.**   The Liquidating Trust shall be established for the sole purpose of administering and distributing the Liquidating Trust Assets, in accordance with Treasury Regulation Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

**(d)     Appointment of Liquidating Trustee.**  The Committee shall appoint the Liquidating Trustee, who shall be retained effective as of the Effective Date.  The name of the Liquidating Trustee will be disclosed in the Plan Supplement.  The Liquidating Trustee shall, in accordance with the Liquidating Trust Agreement, serve in such capacity through the earlier of (i) the date the Liquidating Trust, the Disputed General Unsecured Claims Reserve and the Liquidating Trust Expense Reserve are dissolved and (ii) the date such Liquidating Trustee resigns, is terminated or is otherwise unable to serve; provided, however, that, in the event that the Liquidating Trustee resigns, is terminated or is unable to serve, then the Liquidating Trust Board shall have the right to select a successor who shall be appointed as the Liquidating Trustee and shall serve in such capacity until the Liquidating Trust, the Disputed General Unsecured Claims Reserve and the Liquidating Trust Expense Reserve are dissolved or until such Liquidating Trustee resigns, is replaced or is terminated and no successor is appointed.

**(e)     Responsibilities of Liquidating Trustee; Litigation.**

1.     As set forth in more detail in the Liquidating Trust Agreement, the responsibilities of the Liquidating Trustee shall include, but shall not be limited to: (i) the making of Distributions as contemplated herein; (ii) establishing and maintaining the Disputed General Unsecured Claims Reserve, the Litigation Proceeds Reserve, and the Liquidating Trust Expense Reserve in accordance with the terms of this Plan; (iii) investigating, enforcing, settling, compromising, prosecuting and filing the Litigation Claims; (iv) conducting the analysis of General Unsecured Claims and objecting to, settling, compromising, disputing and prosecuting Disputed General Unsecured Claims; (v) filing appropriate tax returns, each in the exercise of its fiduciary obligations; (vi) retaining such professionals as are necessary and appropriate in furtherance of such fiduciary obligations; and (vii) recovering, collecting or receiving any proceeds from or on account of the PIP PMA**.**  The Liquidating Trustee may invest the

Liquidating Trust Assets and assets in the Disputed General Unsecured Claims Reserve and the Liquidating Trust Expense Reserve (including any earnings thereon or proceeds therefrom) as permitted by Section 345 of the Bankruptcy Code or as otherwise approved by the Bankruptcy Court. The Liquidating Trustee may employ Professionals, including, without limitation, in his or her discretion, counsel for the Debtors or counsel for the Committee.

2. The Liquidating Trustee, in its reasonable discretion and upon the exercise of its reasonable business judgment, shall, in an expeditious but orderly manner, liquidate and convert to Cash the assets of the Liquidating Trust and make timely Distributions as provided in this Plan.

3. Any and all Litigation Claims accruing to or assertable by the Debtors shall remain Assets of the Estates pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date shall be transferred to and vest in the Liquidating Trust. Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, only the Liquidating Trust and the Liquidating Trustee shall have the right to pursue or not to pursue, or, subject to the terms of this Plan and the Liquidating Trust Agreement, compromise or settle any Litigation Claims owned or held by the Debtors or their Estates as of the Effective Date. From and after the Effective Date, the Liquidating Trust and the Liquidating Trustee may commence, litigate, and settle any Litigation Claims or rights to payment or claims that belong to the Debtors that may be pending on the Effective Date or instituted by the Liquidating Trust and Liquidating Trustee after the Effective Date, except as otherwise expressly provided in this Plan and the Liquidating Trust Agreement. Other than as set forth herein, no other Person may pursue such Litigation Claims after the Effective Date. The Liquidating Trustee shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for either the Committee or each Debtor in any action pending before the Bankruptcy Court that relates to a Litigation Claim without the need for filing any motion for such relief. In connection with the above-described Litigation Claims, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) shall also exist for the benefit of the Liquidating Trust and shall vest in the Liquidating Trustee and its representatives, and shall also be preserved for and as to the Debtors. The Liquidating Trustee is authorized to take all necessary actions to benefit from such privileges. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all Litigation Claims and approve any such settlement, whether commenced prior to or after Confirmation of the Plan and the Effective Date.

4. Without limitation hereunder, the provisions of any contractual or structural subordination of Claims shall remain enforceable by the Liquidating Trustee on behalf of the Liquidating Trust after the occurrence of the Effective Date. Further, without limitation hereunder, the Liquidating Trustee on behalf of the Liquidating Trust may likewise enforce any right of the Debtors or their estates to equitably or otherwise subordinate Claims under Section 510 of the Bankruptcy Code, which rights are deemed transferred to, remain and are preserved in the Liquidating Trust (except as otherwise expressly set forth herein or as expressly provided in a final, unstayed Order of the Bankruptcy Court in the Chapter 11 Cases).

**(f)** **Expenses of Liquidating Trustee.** Fees and expenses incurred by the Liquidating Trustee shall be paid from the Liquidating Trust Expense Reserve in accordance with Section 6.6(i)(2) below.

(g)     **Bonding of Liquidating Trustee.**  There shall be no bonding of the Liquidating Trustee.

(h)     **Liquidating Trust Board.**  There shall be three (3) trustees of the Liquidating Trust Board.  On the Effective Date, two trustees of the Liquidating Trust Board shall be appointed by the Committee and one trustee of the Liquidating Trust Board shall be appointed by the Prepetition Collateral Agent.  The Committee and the Prepetition Collateral Agent will identify the Persons to serve on the Liquidating Trust Board in the Plan Supplement.  The simultaneous appointment of a Person on the Committee and the Liquidating Trust Board shall be permissible.

(i)     **Distributions.**

1.     Within the time periods provided in Section 6.5 of this Plan, the Liquidating Trustee shall distribute all Liquidating Trust Assets on hand and permitted investments, except such amounts as are necessary to maintain the Liquidating Trust Expense Reserve in accordance with the terms of this Plan.  The Liquidating Trustee may withhold from amounts distributable to any Person any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

2.     As soon as practicable after the Liquidating Trustee receives any Litigation Proceeds (excluding the D&O Settlement Amount), the Liquidating Trustee shall pay the first $200,000 received to the Prepetition Collateral Agent for Distribution Pro Rata to the Holders of the Senior Lender Secured Claims.  Thereafter, the Liquidating Trustee is authorized to pay reasonable fees and expenses of the Liquidating Trust (including, without limitation, such reasonable fees and expenses of the Liquidating Trust Professionals in accordance with the provisions of Section 6.10(b) of this Plan) from the Litigation Proceeds.  As soon as practicable after the Liquidating Trustee receives any Litigation Proceeds in excess of $200,000, the Liquidating Trustee shall establish the Litigation Proceeds Reserve and shall deposit all remaining Litigation Proceeds after payment of such reasonable fees and expenses into the Litigation Proceeds Reserve.

3.     The Liquidating Trustee shall: (a) pay fifty percent (50%) of any Litigation Proceeds held in the Litigation Proceeds Reserve (the "Distributable Litigation Proceeds") to the Prepetition Collateral Agent for Distribution Pro Rata to the Holders of Allowed Senior Lender Deficiency Claims; and (b) distribute fifty percent (50%) of the Distributable Litigation Proceeds Pro Rata to the Holders of Allowed General Unsecured Claims in accordance with the provisions of this Plan (the foregoing funds payable to the Prepetition Collateral Agent, the "Senior Lender Litigation Proceeds", and the foregoing funds payable to the Holders of Allowed General Unsecured Claims, the "General Unsecured Creditor Litigation Proceeds").  Notwithstanding the foregoing, the D&O Settlement Amount is payable only: (i) to holders of Allowed General Unsecured Claims, which are Liquidating Trust beneficiaries, and (ii) on account of Liquidating Trustee fees and expenses specified in Section 6.6(i)(2) of this Plan.

**(j)** **Fiduciary Duties of the Liquidating Trustee and Liquidating Trust Board.** Pursuant to this Plan and the Liquidating Trust Agreement, the Liquidating Trustee and each of the Persons serving on the Liquidating Trust Board shall act in a fiduciary capacity on behalf of the interests of all Holders of Allowed Senior Lender Deficiency Claims and all Holders of Allowed General Unsecured Claims that will receive Distributions pursuant to the terms of this Plan.

**(k)** **Dissolution of the Liquidating Trust.** The Liquidating Trust shall be dissolved no later than three (3) years from the Effective Date unless either: (i) the Bankruptcy Court, upon a motion filed prior to the third anniversary or the end of any extension period approved by the Bankruptcy Court (the filing of which shall automatically extend the term of the Liquidating Trust pending the entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension (not to exceed two years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets, or (ii) the Prepetition Collateral Agent consents in writing to such an extension. After (a) the Final Distribution of all Litigation Proceeds, the Disputed General Unsecured Claims Reserve, the D&O Settlement Amount and the Liquidating Trust Expense Reserve pursuant to this Plan, (b) the filing by or on behalf of the Liquidating Trust of a certification of dissolution with the Bankruptcy Court in accordance with this Section, the Liquidating Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

**(l)** **Liability, Indemnification.** Neither the Liquidating Trustee, the Liquidating Trust Board, their respective members, designees or professionals, or any duly authorized agent or representative of the Liquidating Trust, the Liquidating Trustee or the Liquidating Trust Board, nor their respective employees or members, shall be liable for the act or omission of any other member, designee, agent, or representative of such Liquidating Trustee or Liquidating Trust Board, nor shall such Liquidating Trustee, Liquidating Trust Board, or any member of the Liquidating Trust Board be liable for any act or omission taken or not taken in its capacity as Liquidating Trustee, Liquidating Trust Board or member of such Board, respectively, other than for specific acts or omissions resulting from such Liquidating Trustee's, Board's or such member's willful misconduct, gross negligence or fraud. Each of the Liquidating Trustee or the Liquidating Trust Board may, in connection with the performance of their functions, and in its sole and absolute discretion, consult with its attorneys, accountants financial advisors and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinion rendered by such entities, regardless of whether such advice or opinions are provided in writing. Notwithstanding such authority, neither the Liquidating Trustee nor the Liquidating Trust Board shall be under any obligation to consult with its attorneys, accountants, financial advisors and agents, and their determination not to do so shall not result in the imposition of liability on the Liquidating Trustee or the Liquidating Trust Board or their respective members and/or designees, unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee, the Liquidating Trust Board and any duly authorized member, agent or designee thereof (in their capacity as such), from and against and in respect of all liabilities, losses, damages, claims, costs, and expenses (including, without limitation, reasonable attorney's

fees, disbursements and related expenses), which such entities may incur or to which such entities may become subject in connection with any action, suit, proceeding, or investigation brought by or threatened against such entities arising out of or due to their acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of their duties thereunder/hereunder; provided, however, that no such indemnification will made to such entities for actions or omissions as a result of their willful misconduct, gross negligence, or fraud.

(m)     **Full and Final Satisfaction against Liquidating Trust.**  On and after the Effective Date, the Liquidating Trust shall have no liability on account of any Claims or Interests except as set forth in this Plan and in the Liquidating Trust Agreement.  All payments and all distributions made by the Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement and release of all Claims against the Liquidating Trust; provided, however, that nothing contained in this section 6.6(m) of the Plan, or in any other provision of this Plan, shall be deemed to constitute or result in a discharge of any Debtor under Bankruptcy Code Section 1141(d).

**Section 6.7     Cancellation of Instruments and Stock**.  On the Effective Date, all instruments evidencing or creating any indebtedness or obligation of the Debtors, except such instruments that are authorized, issued or Reinstated under this Plan, shall be canceled and extinguished. Additionally, as of the Effective Date, all Equity Interests, and any and all warrants, options, rights or interests with respect to Equity Interests that have been issued, or that have been authorized to be issued but that have not been issued, shall be deemed canceled and extinguished without any further action of any party; provided, however, that the Senior Lender Notes shall continue in effect.  The Holders of or parties to the canceled notes, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to this Plan.  Notwithstanding any provision contained in this Plan to the contrary, the distribution provisions contained in each of the Senior Lender Notes shall continue in effect.

**Section 6.8     Dissolution of Corporate Entities.**  Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under the Plan involving the corporate structure of the Debtors shall be deemed authorized and approved without any requirement of further action by the Debtors, the Debtors' shareholders or the Debtors' boards of directors.  Each Debtor (and its boards of directors) shall dissolve or otherwise terminate their existence following the Effective Date.  Such dissolutions may be effected pursuant to this Plan by the entry of an Order of the Bankruptcy Court, which could be the Confirmation Order, or by the entry of an Order of another court of competent jurisdiction.  Each of the Debtors shall file the Confirmation Order with the official public office for keeping corporate records in their respective state of incorporation or organization or take such other actions as the Debtors deem appropriate to provide for the revocation of the corporate charter for each of the Debtors.  The Confirmation Order shall provide that the Debtors will not be required to pay any outstanding or delinquent franchise taxes in order to effectuate the dissolution.  Each of the Debtors shall file, if necessary, a Certification and Notice of Termination on Form 15 with the Securities and Exchange Commission or take such other appropriate action as may be reasonably necessary and appropriate to terminate the registration of its securities.

**Section 6.9    Operating Reports.**  Prior to the Effective Date, the Debtors shall timely file all reports, including without limitation, monthly operating reports, required by the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules or Office of the United States Trustee.  After the Effective Date, the Liquidating Trustee shall timely file all reports, including without limitation, quarterly operating reports, as required by the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules or Office of the United States Trustee.

**Section 6.10    Post-Confirmation Professional Fees and Expenses**.

> **(a)**    Professionals that perform post-Confirmation Date services for the Debtors shall provide monthly invoices to the Debtors and the Prepetition Collateral Agent describing the services rendered, and the fees and expenses incurred in connection therewith, on or before the 20th day following the end of the calendar month during which such services were performed.  Subject to Section 6.6(i)(2), Professionals who timely tender such invoices shall be paid by the Debtors for such services not less than ten (10) days after the submission to the Debtors and the Prepetition Collateral Agent by such Professionals of said monthly invoices, unless, within said ten (10) day period, a written objection to said payment is made.  To the extent a written objection to a Professional's monthly invoice cannot be resolved by the parties, payment of such invoice shall be made only upon Final Order of the Bankruptcy Court.

> **(b)**    Professionals that perform post-Confirmation Date services for the Liquidating Trustee shall provide monthly invoices to the Liquidating Trustee and each trustee of the Liquidating Trust Board describing the services rendered, and the fees and expenses incurred in connection therewith, on or before the 20th day following the end of the calendar month during which such services were performed.  Professionals who timely tender such invoices shall be paid by the Liquidating Trustee for such services not less than ten (10) days after the submission to the Liquidating Trustee and each trustee of the Liquidating Trust Board by such professionals of said monthly invoices, unless, within said ten (10) day period, a written objection to said payment is made by the Liquidating Trustee or any trustee of the Liquidating Trust Board.  To the extent a written objection to a professional's monthly invoice cannot be resolved by the parties, payment of such invoice shall be made only upon Final Order of the Bankruptcy Court.

**Section 6.11    Disposition of Books and Records.**  After the Effective Date, the Debtors shall transfer all of the Debtors' books and records in their possession relating to the conduct of the Debtors' business prior to the Effective Date to the Liquidating Trustee.  Thereafter, the Liquidating Trustee shall grant the Debtors access to such books and records and provide such cooperation and assistance as shall be reasonably required to enable the Debtors to complete their respective legal, regulatory, fiduciary, and financial reporting requirements and to complete their respective tax returns.  The Liquidating Trustee shall be promptly reimbursed for the Liquidating Trustee's reasonable out-of-pocket expenses associated with requests made by the Debtors or other parties under this Section 6.11, but no other charges shall be payable by the requesting party to the other party in connection with such requests.  Pursuant to Section 554(a) of the Bankruptcy Code, the Liquidating Trustee is authorized, from time to time and upon the consent of the Debtors to the extent such consent can be reasonably obtained, to abandon or otherwise destroy documents and records (whether in electronic or paper format) that the Liquidating Trustee determines, in his reasonable business judgment, are no longer necessary to

administration of the Chapter 11 Cases and the wind up of the Debtors' Estates. The Liquidating Trustee shall be permitted to abandon or otherwise destroy such documents and records notwithstanding any federal, state or local law or requirement requiring the retention of the applicable documents or records. The Liquidating Trustee may abandon or destroy such documents and records without further application to the Court or notice to any party other than the Debtors; provided, however, that, prior to the 30th day after the Effective Date, the Prepetition Collateral Agent or any appropriate governmental authorities shall be permitted to request the retention of any such documents and records at their own expense.

## ARTICLE VII.
## PROVISIONS GOVERNING RESERVES AND DISTRIBUTIONS

**Section 7.1     Distributions.**     The Debtors and/or the Liquidating Trustee may employ or contract with other entities to assist in or make the Distributions required by this Plan, subject to the approval of the Prepetition Collateral Agent and in respect of the Liquidating Trustee, with the additional approval of the Liquidating Trust Board. Upon the making of any Distribution to Holders of Allowed Claims or the transfer of any payment to the Liquidating Trustee or the Prepetition Collateral Agent in accordance with this Plan, including but not limited to the payment of the Litigation Fund Payment and the General Unsecured Cash Payment, the Debtors, the Prepetition Collateral Agent or the Liquidating Trustee, as applicable, shall have no further obligations or liability to any party with respect to such Distribution.

**Section 7.2     Distributions by Liquidating Trustee.** If, in the discretion of the Liquidating Trustee, there is insufficient available Cash to make a cost-efficient Distribution and the average Distribution to be made to each recipient of such Distribution would be less than Twenty-Five Dollars ($25.00), the Liquidating Trustee shall not be obligated to make a Distribution and such funds shall, in the Liquidating Trustee's discretion, be paid to the Prepetition Collateral Agent for Pro Rata Distribution to the Holders of Allowed Senior Lender Deficiency Claims.

**Section 7.3     Objection Deadline; Prosecution of Objections.**  Except as otherwise provided for in this Plan, as soon as reasonably practicable, but in no event later than the Claims Objection Deadline (unless extended, after notice to those creditors who requested notice in accordance with Bankruptcy Rule 2002, by an Order of the Bankruptcy Court), the Debtors shall File Objections to Claims and serve such objections upon the Holders of each of the Claims to which Objections are made; provided, however, that the Liquidating Trustee shall have the sole authority to File Objections to General Unsecured Claims and shall likewise have authority hereunder to extend claims objection deadlines. Nothing contained herein shall limit the rights of the Debtors or the Liquidating Trustee to object to Claims, if any, Filed or amended more than one hundred twenty (120) days after the Effective Date. The Debtors or the Liquidating Trustee, as applicable, shall be authorized to resolve all Disputed Claims by withdrawing or settling such Objections thereto, or by litigating to judgment in the Bankruptcy Court, or such other court having competent jurisdiction, the validity, nature, and/or amount thereof. If the Debtors or the Liquidating Trustee, as applicable, agree with the Holder of a Disputed Claim to compromise, settle, and/or resolve a Disputed Claim by granting such Holder an Allowed Claim in the amount of $100,000 or less, then the Debtors or the Liquidating Trustee, as applicable, may compromise, settle, and/or resolve such Disputed Claim without Bankruptcy Court approval. Otherwise, the Debtors or the Liquidating Trustee may only compromise, settle, and/or resolve such Disputed

Claim with Bankruptcy Court approval.

**Section 7.4    Establishment and Maintenance of Reserve for Disputed General Unsecured Claims.**  The amount of Cash deposited into the Disputed General Unsecured Claims Reserve shall be equal to the percentage of Cash that Holders of Disputed General Unsecured Claims would be entitled under this Plan if such Disputed General Unsecured Claims were Allowed Claims in the amount of such Disputed General Unsecured Claim or such lesser amount as authorized by a Final Order.  For the purposes of effectuating the provisions of this Section and the Distributions to Holders of Allowed General Unsecured Claims, the Liquidating Trustee may, at any time and regardless of whether an objection to a Disputed General Unsecured Claim has been brought, request that the Bankruptcy Court estimate, set, fix or liquidate the amount of such Disputed General Unsecured Claim pursuant to Section 502(c) of the Bankruptcy Code, in which event the amounts so estimated, fixed or liquidated shall be deemed the Allowed amounts of such Claims for purposes of Distribution under this Plan.  In lieu of estimating, fixing or liquidating the amount of any Disputed General Unsecured Claim, the Bankruptcy Court may determine the amount to be reserved for such Disputed General Unsecured Claim (singularly or in the aggregate), or such amount may be fixed by an agreement in writing by and between the Liquidating Trustee and the Holder of a Disputed General Unsecured Claim.

**Section 7.5    Distributions Upon Allowance of Disputed General Unsecured Claims.**  The Holder of a Disputed General Unsecured Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive a Distribution from the Disputed General Unsecured Claims Reserve as soon as practical following the date on which such Disputed General Unsecured Claim becomes an Allowed Claim pursuant to a Final Order or by agreement of the parties. Such Distributions shall be made in accordance with this Plan based upon the Distributions that would have been made to such Holder under this Plan if the Disputed General Unsecured Claim had been an Allowed Claim on or prior to the Effective Date.  No Holder of a Disputed General Unsecured Claim shall have any Claim against the Disputed General Unsecured Claims Reserve, the Liquidating Trustee or the Debtors with respect to such Claim until such Disputed General Unsecured Claim shall become an Allowed Claim, and no Holder of a Disputed General Unsecured Claim shall have any right to interest, dividends or other Distribution on such Disputed General Unsecured Claim except as provided in this Section.

**Section 7.6    Surplus Distribution.**  To the extent that a Disputed General Unsecured Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, any excess of Cash in the Disputed General Unsecured Claims Reserve attributable to such Disputed Claim in excess of Cash actually distributed on account on such Disputed General Unsecured Claim shall be deemed Surplus Distributions.  The Liquidating Trustee shall make a supplemental Distribution or Distributions of the Surplus Distributions to Holders of Allowed General Unsecured Claims on a Pro Rata basis within the time periods provided in Section 6.5 of this Plan.

**Section 7.7    Undeliverable and Unclaimed Distributions.**

**(a)    Holding and Investment of Undeliverable and Unclaimed Distributions.**  If the Distribution to any Holder of an Allowed Claim is returned to the Debtors or the Liquidating Trustee as undeliverable or is otherwise unclaimed, no more Distributions

shall be made to such Holder unless and until the Debtors or the Liquidating Trustee are notified in writing of such Holder's then current address.

(b)     **After Distributions Become Deliverable.**     The Debtors or the Liquidating Trustee shall make all Distributions that have become deliverable or have been claimed since the Distribution Date as soon as reasonably practicable after such Distribution has become deliverable.

(c)     **Failure to Claim Unclaimed/Undeliverable Distributions.**  Any Holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed Distribution within six (6) months after the Distribution Date shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution and any subsequent Distribution on account of its Allowed Claim and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed Distribution or any subsequent Distribution on account of its Allowed Claim against the Debtors, their Estates, the Liquidating Trust or their property.  In such cases, any Cash share of Litigation Proceeds for Distribution on account of such claims for undeliverable or unclaimed Distributions or Cash Litigation Proceeds for any subsequent Distribution on account of such Allowed Claim (collectively, "Unclaimed Distributions") shall be: (i) paid fifty percent (50%) to the Prepetition Collateral Agent for Distribution Pro Rata to the Holders of Senior Lender Deficiency Claims; and (ii) paid fifty percent (50%) Pro Rata to Holders of Allowed General Unsecured Claims by the Liquidating Trustee (other than Holders waiving Distribution rights hereunder), free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary; provided, however, any Unclaimed Distributions in respect of the D&O Settlement Amount shall be paid only to Holders of General Unsecured Claims who had received Distributions (subject to the rights of the Liquidating Trustee in respect of Section 6.6(i)(2) of this Plan regarding his/her expenses). Further, subject to Section 6.5(c)(2) hereof, in such cases, any Cash share of the General Unsecured Cash Payment allocable to Unclaimed Distributions shall be paid by the Liquidating Trustee Pro Rata to Holders of Allowed General Unsecured Claims other than Holders of such Claims waiving Distribution rights hereunder, in connection with Unclaimed Distributions, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary. Nothing contained in this Plan shall require the Debtors or the Liquidating Trustee to attempt to locate any Holder of an Allowed Claim.  Notwithstanding the foregoing, any Unclaimed Distribution on account of any Claim other than a General Unsecured Claim under this Plan shall be paid to the Prepetition Collateral Agent for Distribution Pro Rata to the Holders of Senior Lender Secured Claims, free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary.

**Section 7.8     Interest on Claims**. Unless otherwise specifically provided for in this Plan, the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.

**Section 7.9     Means of Cash Payment.**  Cash payments made pursuant to this Plan shall be in U.S. funds, by the means, including by check or wire transfer, determined by the Debtors or the Liquidating Trustee.  Cash payments to foreign creditors may be made, at the option of the Debtors or the Liquidating Trustee, in such funds and by such means as are necessary or

customary in a particular foreign jurisdiction.

**Section 7.10    Delivery of Distribution.**  Except as otherwise set forth in this Plan, Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth on the Proofs of Claim Filed by such Holders (or at the last known addresses of such Holders if no Proof of Claim is Filed or if the Debtors have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Debtors or the Liquidating Trustee, or (c) if no Proof of Claim has been Filed and the Debtors or the Liquidating Trustee have not received a written notice of a change of address, at the addresses reflected in the Schedules, if any.

**Section 7.11    Record Date for Distributions.**  The Debtors or the Liquidating Trustee will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims that are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date.  The Debtors or the Liquidating Trustee shall instead be entitled to recognize and deal for all purposes under this Plan with only those record holders stated on the official claims register as of the close of business on the Distribution Record Date.

**Section 7.12    No Distributions Pending Allowance.**  Notwithstanding any other provision of this Plan, no payments or Distributions by the Debtors or the Liquidating Trustee shall be made with respect to all or any portion of a Disputed Claim unless and until all Objections to such Disputed Claim have been settled or withdrawn by agreement of the parties or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim; provided however, that the Debtors may in their discretion pay any undisputed portion of a Disputed Administrative, Priority Tax and Priority Non-Tax Claim.

**Section 7.13    Withholding and Reporting Requirements.**  In connection with this Plan and all Distributions hereunder, the Debtors or the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements.  The Debtors or the Liquidating Trustee shall be authorized to take any and all actions that may be reasonably necessary or appropriate to comply with such withholding and reporting requirements.  All persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes.  Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.

**Section 7.14    Setoffs.**  The Debtors or the Liquidating Trustee may, but shall not be required to, setoff against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that a Debtor may have against the Holder of such Claim; provided, however, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Liquidating Trustee of any such claim that the Debtors or the Liquidating Trustee may have against such Holder, unless otherwise agreed to in writing by such Holder and the Debtors or the Liquidating

Trustee, as applicable.

**Section 7.15** *De Minimis* **Distributions.** Notwithstanding any provision in this Plan to the contrary, no payment of less than Twenty-Five Dollars ($25.00) shall be made on account of any Allowed Claim, unless a specific request therefor is made in writing to the Debtors or the Liquidating Trustee on or before thirty (30) days after the Effective Date. All Distributions not made pursuant to this Section shall be treated as Unclaimed Distributions and otherwise subject to Section 7.7(c) hereof.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND  LEASES

**Section 8.1** **Executory Contracts and Unexpired Leases Deemed Rejected.** On the Effective Date, all of the Debtors' executory contracts and unexpired leases will be deemed rejected in accordance with, and subject to, the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, except to the extent: (a) the Debtors previously have assumed or rejected an executory contract or unexpired lease, or (b) prior to the Effective Date, the Debtors have Filed or File a motion to assume an executory contract or unexpired lease on which the Bankruptcy Court has not ruled. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. For the avoidance of doubt, the Assets comprising the PIP PMA are not executory and are not subject to assumption or rejection.

**Section 8.2** **Bar Date For Rejection Damages.** If the rejection of an executory contract or an unexpired lease by the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or any of them or their properties or agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon the Debtors by the earlier of: (a) thirty (30) days after receipt of the notice of the Confirmation Date, or (b) such other deadline as the Court has or may set for asserting a Claim for such damages.

## ARTICLE IX.
## CONFIRMATION AND CONSUMMATION OF THE PLAN

**Section 9.1** **Conditions Precedent to Confirmation.** Each of the following are conditions precedent to Confirmation:

      **(a)** the Southwest Exchange Settlement Orders, in a form and substance reasonably acceptable to the Debtors and the Prepetition Collateral Agent, shall have been entered and shall have become Final Orders; and

      **(b)** the Bankruptcy Court shall have determined that the Debtors are duly authorized to take the actions contemplated in this Plan which approval and authorization may be set forth in the Confirmation Order.

**Section 9.2** **Conditions Precedent to the Effective Date.** Each of the following are conditions precedent to the occurrence of the Effective Date:

**(a)**     the Confirmation Order, in a form and substance reasonably acceptable to the Debtors, the Prepetition Collateral Agent and the Committee, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

**(b)**     at the deemed direction of the Prepetition Collateral Agent, the Debtors shall have delivered the Litigation Fund Payment and the General Unsecured Cash Payment, and as may be necessary, facilitated the transfer of any Litigation Proceeds, including, without limitation, the D&O Settlement Amount, collected or received prior to the Effective Date, to the Liquidating Trustee, in Cash or immediately available funds, pursuant to Section 6.5(a)(5) of this Plan;

**(c)**     the Debtors shall have established the Disputed Administrative, Priority Tax and Priority Non-Tax Claims Reserve and the Plan Expense Reserve, pursuant to Section 6.5(a)(2) of this Plan; and

**(d)**     all documents, instruments, and agreements provided under, or necessary to implement, this Plan shall have been executed and delivered by the applicable parties; and

**(e)**     all other documents required to be Filed as an exhibit or schedule to this Plan, each in form and substance reasonably acceptable to the Debtors, the Prepetition Collateral Agent and the Committee, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

**Section 9.3     Notice of Effective Date.**  On or before five (5) Business Days after the Effective Date, the Debtors shall mail or cause to be mailed to all Holders of Claims in Classes 3, 4 and 5 that are not Disallowed Claims a notice that informs such Persons of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Debtors deem appropriate or as may be ordered by the Bankruptcy Court.

**Section 9.4     Waiver of Conditions Precedent to the Effective Date.**  The Debtors, with the written consent of the Prepetition Collateral Agent and the Committee, may at any time, without notice or authorization of the Bankruptcy Court, waive in writing any or all of the conditions precedent to the Effective Date set forth in Section 9.2, whereupon the Effective Date shall occur without further action by any Person; <u>provided</u>, <u>however</u>, that the conditions specified in Sections 9.1(a) and (b) and Section 9.2(b) may not be waived.  The Debtors reserve the right to assert that any appeal from the Confirmation Order shall be moot after the Effective Date of this Plan.

# ARTICLE X.
## EFFECTS OF CONFIRMATION

**Section 10.1   Binding Effect**.  This Plan shall be binding upon and inure to the benefit of the Debtors, all present and former Holders of Claims and Equity Interests, and their respective successors and assigns.

**Section 10.2   Releases**.

(a)     **Releases by the Debtors for Post-Petition Conduct.**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors in their individual capacities and as debtors-in-possession will be deemed to release and forever waive all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or after the Petition Date through and including the Effective Date in any way relating to the Debtors, the Non-Debtor Subsidiaries, the Chapter 11 Cases, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates against (i) the following individuals who were serving as an officer or director of the Debtors or their Non-Debtor Subsidiaries on or after the Petition Date: Dennis Stogsdill, Mark E. Brown, Arnaud Danel, Eugene I. Davis, C. Scott Eschbach, Miles Hartfeld, Thomas Y. Hartley, Paul Kimmel, Patrick O'Leary, S. Clay Rogers, and Bradley E. Scher, (ii) the attorneys, accountants, investment bankers, restructuring consultants and financial advisors of each of the Debtors, (iii) the Prepetition Collateral Agent, each of the Senior Lenders and their professionals, and (iv) the members of the Committee and the Committee's professionals; <u>provided</u>, <u>however</u>, that nothing in this section shall be construed to release any party from fraud, willful misconduct, criminal conduct or gross negligence as determined by a Final Order.  In addition, the releases contained in this section shall not apply to or otherwise affect the obligations of any of the Debtors' present and former directors and officers to repay loans or advances of money or other property owed to the Debtors or their Estates.

(b)     **Releases by the Debtors for Pre-Petition Conduct.**  As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors in their individual capacities and as debtors-in-possession will be deemed to release and forever waive all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place prior to the Petition Date in any way relating to the Debtors or the Non-Debtor Subsidiaries, and that could have been asserted by or on behalf of the Debtors or their Estates against (i) Dennis Stogsdill, Alvarez & Marsal North America, LLC and all of its affiliates, (ii) Lowenstein Sandler PC, Greenberg Traurig, LLP, and all of their employees or agents, or (iii) the Prepetition Collateral Agent, each of the Senior Lenders and their professionals; <u>provided</u>, <u>however</u>, that nothing in this section shall be construed to release any party from fraud, willful misconduct, criminal conduct or gross negligence as determined by a Final Order. In addition, the releases contained in this section shall not apply to or otherwise affect obligations of any of the Debtors' present and former directors and officers to repay loans or advances of money or other property owed to the Debtors or their Estates.

(c)     **Releases by Holders of Claims.**  On the Effective Date, all Entities who (a) directly or indirectly, have held, hold, or may hold Claims, (b) vote to accept the Plan as set forth on the relevant Ballot, and (c) do not mark their Ballot to indicate their refusal to grant the releases provided in this paragraph, shall be deemed, by virtue of their receipt of

Distributions and/or other treatment contemplated under the Plan, to have forever released and covenanted with (i) the Debtors, the Non-Debtor Subsidiaries, Dennis Stogsdill, Alvarez & Marsal North America, LLC and all of its affiliates, (ii) Lowenstein Sandler PC, Greenberg Traurig, LLP, and all of their employees or agents, or (iii) the Prepetition Collateral Agent, each of the Senior Lenders and their professionals; and (iv) the Committee and its professionals (collectively the "Released Parties," and each a "Released Party") not to (y) sue or otherwise seek recovery from any of the Debtors or any Released Party on account of any Claim, including but not limited to any Claim based upon tort, breach of contract, violations of federal or state securities laws or otherwise, based upon any act, occurrence, or failure to act from the beginning of time through the Effective Date in any way related to the Debtors or their business and affairs, or (z) assert against any of the Debtors or any Released Party any claim, obligation, right, cause of action or liability that any holder of a Claim or Interest may be entitled to assert, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, or occurrence from the beginning of time through the Effective Date in any way relating to the Debtors, the Chapter 11 Cases, or the Plan; provided, however, (i) none of the Released Parties shall be released from any claim primarily based on any act or omission that constitutes fraud, willful misconduct, criminal conduct or gross negligence as determined by a Final Order, (ii) the foregoing release shall not apply to Administrative Expense Claims or obligations arising under the Plan, and (iii) the foregoing release shall not be construed to prohibit a party in interest from seeking to enforce the terms of the Plan. Notwithstanding anything to the contrary in the Plan, the releases of the Released Parties shall extend only to claims arising against such Released Parties arising out of or relating to their conduct in connection with the Debtors. Any Holder of a Claim may mark its Ballot to indicate its refusal to grant the releases provided in this paragraph without prejudice to its right to receive a Distribution under this Plan.

(d)     Releases by the Senior Lenders.  Notwithstanding anything to the contrary in the Plan, nothing in the Plan shall be construed to constitute a release by the Senior Lenders of any Claims they held, hold, or may hold, against the Released Parties.

(e)     Injunction Related to Releases.  The Confirmation Order will permanently enjoin the commencement or prosecution by any entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to this Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released in this Section 10.2.  Such injunction shall not apply to a Holder of a Claim that marks its Ballot to indicate its refusal to grant the releases provided in this Section 10.2 or actions prosecuted by the Securities and Exchange Commission.

(f)     Once approved by Final Order of the Bankruptcy Court, the Director/Officer Settlement shall be enforceable consistent with the terms of this Plan and pursuant to the D&O Settlement Agreement.

Section 10.3   No Discharge of Claims.  Pursuant to Section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge Claims against the Debtors.

**Section 10.4   Exculpation and Limitation of Liability.   Notwithstanding any other provision of this Plan, neither the Debtors, the members of the Committee, the Committee, the Prepetition Collateral Agent, the Senior Lenders, nor any of their respective present or former members, officers, directors, employees, advisors or attorneys shall have or incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Equity Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission arising out of the Chapter 11 Cases, formulating, negotiating or implementing this Plan (including the Disclosure Statement), the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the confirmation of this Plan, the consummation of this Plan or the administration of this Plan or the property to be distributed under this Plan, except for their gross negligence or willful misconduct as determined by a Final Order, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan; provided, however, nothing in this Section shall be deemed to waive any objections to any Claims against any of the Debtors or any rights to object to any such Claims or to bring an adversary proceeding to subordinate Claims under Section 510(c) of the Bankruptcy Code, except for such rights, objections, claims and defenses with respect to the Senior Lender Claims which are expressly waived pursuant to this Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such released parties from liability.**

**Section 10.5   Liquidating Trust Injunction.   Except as expressly contemplated by this Plan or the Confirmation Order, all Entities who have held, currently hold or may hold Claims against or Interests in the Debtors or their Estates that arose prior to the Effective Date (including, but not limited to, Governmental Units, and any official, employee or other entity acting in an individual or official capacity on behalf of any Governmental Unit) are permanently enjoined from: (i) commencing or continuing in any manner, directly, or indirectly, any action or other proceeding against the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Board, and each of their members, designees, or agents (in such capacity) (collectively, the "Liquidating Trust Protected Parties"); (ii) enforcing, attaching, executing, collecting or recovering in any manner, directly or indirectly, any judgment, award, decree, or order against any Liquidating Trust Protected Party or its property; (iii) creating,  perfecting, or enforcing, directly or indirectly, any lien or encumbrance of any kind against any Liquidating Trust Protected Party or its property; (iv) asserting or effecting, directly or indirectly, any setoff or right of subrogation of any kind against any obligation due to any Liquidating Trust Protected Party or its property; and (v) any act, in any manner, in any place whatsoever, that does not conform to, comply with, or is inconsistent with the provisions of this Plan in respect of the Liquidating Trust Protected Parties and their property.  Any Entity injured by any willful violation of such injunction shall recover actual damages, including, but not limited to, costs and attorneys' fees and expenses, and, in appropriate circumstances, may recover punitive damages from the willful violator.  Nothing contained in this Section 10.5 of this Plan shall prohibit the Holder of a Disputed Claim in Class 5 of this Plan from litigating its right to seek to have such a Disputed Claim declared an Allowed Claim in such Class 5 and paid in accordance with the distribution provisions of this Plan or the Liquidating Trust Agreement, or enjoin**

or prohibit the interpretation or enforcement by the Holder of such Disputed Claim of any of the obligations of any Liquidating Trust Protected Party under this Plan.

**Section 10.6  Term of Bankruptcy Injunction or Stays**.  All injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**Section 10.7  Votes Solicited in Good Faith.**  The Debtors (and each of their respective affiliates, agents, directors, officers, members, employees, advisors, and attorneys) have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and, therefore, have not and will not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

**Section 10.8  Subordination**.  The classification and manner of satisfying all Allowed Claims and the respective Distributions and treatments hereunder take into account and/or conform to the relative priority and rights of the Claims and Equity Interests in each Class in connection with the contractual, legal and equitable subordination rights relating thereto whether arising under contract, general principles of equitable subordination, Section 510(b) of the Bankruptcy Code or otherwise.

**Section 10.9  Insurance.**  Confirmation of this Plan and the occurrence of the Effective Date shall have no effect on insurance policies of the Debtors in which the Debtors are or were insured parties.  Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to the Chapter 11 Cases, this Plan or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for insured Claims.

**ARTICLE XI.**
**RETENTION OF JURISDICTION**

**Section 11.1  Exclusive Jurisdiction of Bankruptcy Court.**  Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

      **(a)**  allow, disallow, determine, subordinate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest (whether filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including the compromise, settlement and resolution of any request for payment of any Administrative Expense Claim or Priority Claim, the resolution of any Objections to the allowance or priority of Claims or Equity Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim or Equity Interest to the extent permitted under applicable law;

**(b)** grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

**(c)** hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all causes of action, and consider and act upon the compromise and settlement of any Claim, or cause of action;

**(d)** determine and resolve controversies related to the Liquidating Trust;

**(e)** determine and resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

**(f)** ensure that all Distributions to Holders of Allowed Claims under this Plan and the performance of the provisions of this Plan are accomplished as provided herein and resolve any issues relating to Distributions to Holders of Allowed Claims pursuant to the provisions of this Plan;

**(g)** construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with Section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of this Plan and all contracts, instruments, releases, other agreements or documents created in connection with this Plan, including, without limitation, the Disclosure Statement and the Confirmation Order, for the maintenance of the integrity of this Plan in accordance with Sections 524 and 1141 of the Bankruptcy Code following the occurrence of the Effective Date;

**(h)** determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of this Plan (and all exhibits and schedules to this Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by this Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

**(i)** modify this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code and this Plan;

**(j)** issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(k)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(l)     determine any other matters that may arise in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(m)     determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(o)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(p)     determine and resolve controversies related to the Estates, the Debtors or the Liquidating Trust from and after the Effective Date;

(q)     hear and determine any other matter relating to this Plan; and

(r)     enter a final decree closing these Chapter 11 Cases.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

**Section 12.1   Revocation, Withdrawal or Non-Occurrence of the Effective Date.**   The Debtors, in consultation with the Prepetition Collateral Agent and the Committee, reserve the right to withdraw this Plan prior to the Confirmation Hearing Date.  If this Plan is withdrawn or if either Confirmation or the Effective Date does not occur, then (a) this Plan shall be null and void in all respects, and (b) nothing contained in this Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors, the Senior Lenders or any other Person, or (iii) constitute an admission of any sort by the Debtors, the Senior Lenders or any other Person.

**Section 12.2   Modification of the Plan.**  Upon the mutual written consent of the Debtors, the Committee and the Prepetition Collateral Agent, the Debtors may alter, amend, or modify this Plan or any exhibits or schedules hereto under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Hearing and prior to the Effective Date of this Plan, the Debtors may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan so long as such proceedings do not materially or adversely affect the treatment of Holders of Claims or Equity Interests under this Plan; provided, however, prior notice of such proceedings shall be served in

accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

**Section 12.3   Severability of Plan Provisions.**  If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors with the consent of the Prepetition Collateral Agent and the Committee, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Section 12.4   Termination of the Committee.**  The Committee shall dissolve on the Effective Date and the members of such Committee shall be released and discharged from all further rights and duties arising from or related to the Chapter 11 Cases.  The Professionals retained by the Committee shall not be entitled to assert any Administrative Expenses Claims nor shall they have an Allowed Administrative Expense Claims for any services rendered or expenses incurred after the Effective Date except in respect of the preparation and prosecution of or any objection to any Committee Professional final fee application.

**Section 12.5   Post-Confirmation Date Retention of Professionals.**  Upon the Effective Date, any requirement that professionals employed by the Debtors comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Debtors will be authorized to employ and compensate professionals in the ordinary course of business and without the need for Bankruptcy Court approval.

**Section 12.6   Exemption from Transfer Taxes.**  In accordance with Section 1146(a) of the Bankruptcy Code, the Bankruptcy Court will be requested to make findings, in the Confirmation Order, that (i) the issuance, transfer or exchange of security under this Plan or the making or delivery of an instrument of transfer, and (ii) the transfers of the Debtors' assets shall not be taxed under any law imposing stamp or similar tax.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any stamp or similar tax.

**Section 12.7   Tax Reporting and Compliance.**  The Debtors are hereby authorized to request an expedited determination under Section 505 of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

**Section 12.8   Filing of Additional Documents.**  On or before the Effective Date of this Plan, the Debtors may issue, execute, deliver, and file with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to

effectuate, consummate and further evidence the terms and conditions of this Plan.

**Section 12.9   Corporate Action.**  Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the shareholders or directors of one or more of the Debtors, including but not limited to, the dissolution or merger of any of the Debtors, shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to the applicable general corporation law of the states in which the Debtors are incorporated without any requirement of action by the shareholders or directors of the Debtors.

**Section 12.10 Successors and Assigns.**  The rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

**Section 12.11 Governing Law.**  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with this Plan, the construction, implementation and enforcement of this Plan and all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of Delaware or the United States of America.

**Section 12.12 No Admissions.**  Notwithstanding anything herein to the contrary, nothing contained in this Plan shall be deemed an admission by the Debtors or the Senior Lenders with respect to any matter set forth herein, including, without limitation, liability on, or release of, any Claim or Equity Interest or the propriety of any classification of any Claim or Equity Interest.

**Section 12.13 Notices**.  Any notice required or permitted to be provided under this Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

>    If to the Debtors:

>    >    Alvarez & Marsal North America, LLC
>    >    600 Lexington Avenue, 6th Floor
>    >    New York, New York 10022
>    >    Attn:  Dennis Stogsdill

>    >    -and-

>    >    Lowenstein Sandler PC
>    >    65 Livingston Avenue
>    >    Roseland, New Jersey 07068
>    >    Attn: Kenneth A. Rosen, Esq. and Jeffrey D. Prol, Esq.

>    If to the Prepetition Collateral Agent:

Paul Weiss, Rifkind, Wharton & Garrison, LLP
1285 Avenue of the Americas
New York, New York 10019
Attn: Kelley A. Cornish, Esq. and Marc Falcone, Esq.

If to the Committee:

Blank Rome, LLP
405 Lexington Avenue
New York, New York 10174
Attn: Michael Brownstein, Esq.

If to the Office of the United States Trustee:

Office of the United States Trustee
844 King Street, Suite 2207, Lockbox 35
Wilmington, Delaware 19801
Attn: Jane Leamy, Esq.

**Section 12.14 Reservation of Rights.** The filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Debtors with respect to this Plan shall not be, and shall not be deemed to be, an admission or waiver of any rights of the Debtors with respect to the Holders of Claims and Equity Interests.

Dated: February 24, 2010
Wilmington, Delaware

**MediCor Ltd.**
**Debtor and Debtor-in-Possession**

_____
Dennis E. Stogsdill
Chief Restructuring Officer

**International Integrated Incorporated**
**Debtor and Debtor-in-Possession**

_____
Dennis E. Stogsdill
Chief Restructuring Officer

**International Integrated USA Incorporated**
**Debtor and Debtor-in-Possession**

_____

Dennis E. Stogsdill
Chief Restructuring Officer

**MediCor Management, Inc.**
**Debtor and Debtor-in-Possession**

_____

Dennis E. Stogsdill
Chief Restructuring Officer

**MediCor Development Company**
**Debtor and Debtor-in-Possession**

_____

Dennis E. Stogsdill
Chief Restructuring Officer

**MediCor Aesthetics**
**Debtor and Debtor-in-Possession**

_____

Dennis E. Stogsdill
Chief Restructuring Officer

**III Acquisition Corporation d/b/a PIP.America**
**Debtor and Debtor-in-Possession**

_____

Dennis E. Stogsdill
Chief Restructuring Officer

**Intellectual Property International, Inc.**
**Debtor and Debtor-in-Possession**

_____

Dennis E. Stogsdill
Chief Restructuring Officer