## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MEDICOR LTD., *et al.*,[1] | ) | Case No. 07-10877 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Re: Docket No.** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING DEBTORS' SECOND AMENDED CHAPTER 11 JOINT PLAN OF LIQUIDATION

Medicor Ltd. and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors") having proposed and filed the Debtors' Second Amended Chapter 11 Plan of Liquidation, dated August 24, 2010 [Docket No. 1144] (the "Plan");[2] and the Debtors' Disclosure Statement for Debtors' Second Amended Chapter 11 Plan of Liquidation, dated August 24, 2010 [Docket No. 1145] (the "Disclosure Statement"), having been approved by this Court for transmission to Holders of Claims against the Debtors' estates in compliance with title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and this Court's Order (A) Approving Debtors' Disclosure Statement; (B) Approving Solicitation and Notice Procedures; (C) Approving Voting and Tabulation Procedures; and (D) Establishing Confirmation Notice and Objection Procedures, dated August 25, 2010, [Docket No. 1152] (the "Disclosure Statement Order"); and upon the

---

[1]     The Debtors are the following entities: MediCor Ltd., International Integrated Incorporated, International Integrated USA Incorporated, MediCor Management, Inc., MediCor Development Company, MediCor Aesthetics, III Acquisition Corporation d/b/a PIP.America and Intellectual Property International, Inc.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

Declaration of David Malo, an employee of the Court-approved notice, balloting and voting agent, Epiq Bankruptcy Solutions, LLC ("Epiq"), filed on November 3, 2010, describing the methodology for the tabulation and results of voting with respect to the Plan [Docket No. 1209] (the "Voting Declaration"); and upon the Declaration of Dennis Stogsdill in Support of Confirmation of the Debtors' Chapter 11 Joint Plan of Liquidation [Docket No. 1215 ] (the "Stogsdill Declaration") filed with the Court on November 8, 2010; and a hearing having been held before this Court on November 9, 2010, to consider confirmation of the Plan (the "Confirmation Hearing"); and due notice of the Confirmation Hearing having been provided to holders of Claims against and Equity Interests in the Debtors and other parties in interest, in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order, as established by the affidavit of David Malo, an employee of Epiq, filed on September 8, 2010, describing the manner in which votes were solicited with respect to the Plan [Docket No. 1167] (the "Solicitation Affidavit"); and such notice being sufficient under the circumstances and no further notice being required; and based upon and after full consideration of the entire record of the Confirmation Hearing, including (A) the Plan, including the Plan Supplement filed with the Court on October 4, 2010 [Docket No. 1186]; the Disclosure Statement and the Disclosure Statement Order, (B) the Voting Declaration, (C) the Solicitation Affidavit, (D) the Stogsdill Declaration and (E) the Memorandum of Law in Support of Confirmation of Second Amended Joint Chapter 11 Plan of Medicor Ltd. and Its Affiliated Debtors and Debtors in Possession, filed with the Court on November 4, 2010 [Docket No. 1211]; and the Court being familiar with the Plan and other relevant factors affecting the Chapter 11 Cases; and the Court being fully familiar with, and having taken judicial notice of, the entire record of the Chapter 11 Cases; and upon the arguments of counsel and the evidence proffered,

adduced and/or presented at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY FOUND, DETERMINED, ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

A.     <u>Jurisdiction and Venue</u>.  The Court has jurisdiction over the Debtors' Chapter 11 Cases and confirmation of the Plan pursuant to 28 U.S.C. § 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) and the Court has jurisdiction to enter a final order with respect thereto.  Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code.  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     <u>Commencement and Joint Administration of Chapter 11 Cases</u>.  On June 29, 2007 (the "Petition Date"), the Debtors commenced cases under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  By prior order of the Court, the Debtors' Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Bankruptcy Rule 1015.  The Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

C.     <u>Official Committee of Unsecured Creditors</u>.  On July 13, 2007, the United States Trustee for the District of Delaware  (the "U.S. Trustee") appointed a committee to represent the interests of unsecured creditors of the Debtors pursuant to section 1102(a)(1) of the Bankruptcy Code (the "Committee").

D.     <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made,

proffered, adduced and/or presented at the various hearings held before the Court during the pendency of the Chapter 11 Cases.

E.     Burden of Proof.  The Debtors have met their burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard.

F.     Solicitation and Notice.  On August 25, 2010, the Court entered the Disclosure Statement Order, which, among other things, approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and established procedures for the Debtors' solicitation and tabulation of votes on the Plan.  In compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order, the Debtors properly effectuated (A) service of notices of non-voting status (the "Notice of Non-Voting Status") to all known holders of Claims or Equity Interests that are not entitled to vote under the Plan; and (B) service of solicitation packages to each holder of Claims entitled to vote under the Plan (collectively, the "Solicitation Packages"), including (i) the Confirmation Hearing Notice, (ii) the Disclosure Statement (with all exhibits, including the Plan and a copy of the Disclosure Statement Order), (iii) a ballot for voting to accept or reject the plan (a "Ballot") and a pre-addressed return envelope, (iv) an appropriate letter explaining the solicitation process and urging the holders of claims to vote to accept the Plan, and (v) in the Solicitation Packages sent to Holders of Class 5 Claims, an appropriate letter from the Committee urging the holders of such claims to vote to accept the Plan.  As described in the Disclosure Statement Order and as evidenced by the Solicitation Affidavit, (i) service of the Notice of Non-Voting Status and the Solicitation Packages was adequate and sufficient under the circumstances of the Chapter 11 Cases and (ii) adequate and sufficient notice of the Confirmation Hearing and other requirements, deadlines, hearings and matters described in the Disclosure Statement Order was timely provided in compliance with the

Bankruptcy Code, the Bankruptcy Rules and the Local Rules, and provided due process and an opportunity to appear and to be heard, to all parties in interest.

G.    <u>Voting</u>. Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code. As evidenced by the Voting Declaration, votes to accept the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

H.    <u>Plan Supplement</u>. The Plan Supplement complies with the terms of the Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order, and no other or further notice is or shall be required.

## COMPLIANCE WITH SECTION 1129 OF BANKRUPTCY CODE

I.    <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

J.    <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>. In addition to Administrative Expense Claims and Priority Tax Claims that need not be classified, the Plan designates eight Classes of Claims or Equity Interests. The Claims or Equity Interests in each Class are substantially similar to other Claims or Equity Interests in each such Class. Valid business, legal and factual reasons exist for separately classifying the various Classes of Claims and Equity Interests under the Plan, and such Classes do not unfairly discriminate between holders of Claims or Equity Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(a)    *Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))*. The Plan specifies that Classes 1 and 2 are unimpaired under the Plan, within the

meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(b)     *Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).*  The Plan specifies that Classes 3 through 8 are impaired under the Plan, within the meaning of section 1124 of the Bankruptcy Code, and specifies the treatment of such Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(c)     *No Discrimination (11 U.S.C. § 1123(a)(4)).*  The Plan provides for the same treatment for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to less favorable treatment on account of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(d)     *Implementation of Plan (11 U.S.C. § 1123(a)(5)).*  As required by section 1123(a)(5) of the Bankruptcy Code, Articles VI through VII of the Plan provide for adequate and proper means for implementation of the Plan. Specifically, the Plan and the Liquidating Trust Agreement set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including, the establishment of the Liquidating Trust.

(e)     *Charter Provisions (11 U.S.C. § 1123(a)(6)).*  The Plan does not contemplate post-Effective Date business operations and provides for the ultimate dissolution of the Debtors and, therefore, section 1123(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

(f)     *Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).*  The Plan does not contemplate post-Effective Date business operations and provides for the ultimate dissolution of the Debtors.  The Plan, however, contemplates appointment of a Liquidating Trustee and one or more members of the Liquidating Trust Board.  In accordance with the terms of the Plan, the Debtors have fully disclosed to the extent such information is available the identity of the Liquidating Trustee and each of the members of the Liquidating Trust Board.  However, as the Plan does not contemplate post-Effective Date business operations and provides for the ultimate dissolution of the Debtors, section 1123(a)(7) of the Bankruptcy Code is inapplicable to the Plan.

(g)     *Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)).*  The Plan (a) leaves unimpaired Class 1 (Priority Non-Tax Claims) and Class 2 (Southwest Exchange Claims) and (b) impairs Class 3 (Senior Lender Secured Claims), Class 4 (Senior Lender Deficiency Claims), Class 5 (General Unsecured Claims), Class 6 (Interdebtor Claims), Class 7 (Non-Debtor Subsidiary Claims) and Class 8

(Equity Interests and Stock Claims), as contemplated by section 1123(b)(1) of the Bankruptcy Code.

(h)    *Assumption and Rejection of Executory Contracts (11 U.S.C. § 1123(b)(2)).*  Section 8.1 of the Plan provides for the rejection of the executory contracts and unexpired leases of the Debtors as of the Effective Date, in accordance with, and subject to, the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, except to the extent: (a) the Debtors previously have assumed or rejected an executory contract or unexpired lease, or (b) prior to the Effective Date, the Debtors have Filed or File a motion to assume an executory contract or unexpired lease on which the Bankruptcy Court has not ruled.

(i)    *Settlement of Claims or Interests (11 U.S.C. § 1123(b)(3)).*  The Plan provides for the (a) settlement or adjustment of certain claims and interests belonging to the Debtors or their estates, including challenges or defenses to the Senior Lenders' liens and debt claims, including, without limitation, all available challenges under Chapter 5 of the Bankruptcy Code, and (b) retention and enforcement by the Liquidating Trustee of certain other claims or interests belonging to the Debtors or their estates, as contemplated by section 1123(b)(3) of the Bankruptcy Code.

(j)    *Additional Plan Provisions (11 U.S.C. § 1123(b)(6)).*  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, as contemplated by section 1123(b)(6) of the Bankruptcy Code.

(k)    *Bankruptcy Rule 3016(a).*  The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

K.    The Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  As further detailed below, the Debtors comply with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

(a)    Each of the Debtors is a proper debtor under section 109 of the Bankruptcy Code,

(b)    The Debtors have complied with all applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court,

(c)    The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the Disclosure Statement Order, including sections 1125 and 1126(b) of the Bankruptcy Code, in transmitting the Notice of Non-Voting Status,

Solicitation Packages and related documents and in soliciting and tabulating votes with respect to the Plan,

(d)     Good, sufficient and timely notice of the Confirmation Hearing has been provided to each creditor that was entitled to vote to accept or reject the Plan and certain non-voting materials approved by the Court in the Disclosure Statement Order were provided to holders of Claims and Equity Interests that were not entitled to vote to accept or reject the Plan, and

(e)     The Debtors did not solicit acceptances of the Plan by any creditor or equity interest holder prior to the transmission of the Disclosure Statement.

L.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Plan is the product of arm's-length negotiations among the Debtors and their major creditor constituencies in these cases, and represents the culmination of months of intensive negotiations and discussions among all parties. The Plan is supported by the Senior Lenders, the Committee, and certain other major creditors including the Receiver, and was overwhelmingly accepted by creditors as set forth in the Voting Declaration. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful liquidation for the Debtor entities. Further, the release, exculpation, and injunction provisions embodied in the Plan are fair and equitable, and a component of the consensual agreement reached among the Debtors and the various creditor constituencies and are consistent with sections 1123 and 1129 of the Bankruptcy Code. Based on the foregoing, the facts and record of these Chapter 11 Cases, the Disclosure Statement and the record of the Confirmation Hearing, the Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

M.     <u>Payment for Services or Cost and Expenses (11 U.S.C. § 1129(a)(4))</u>. All payments made or to be made by the Debtors for services or for costs and expenses in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases,

have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

N.  Service of Certain Individuals (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The Plan does not contemplate post-Effective Date business operations and provides for the ultimate dissolution of the Debtors on or shortly after the Effective Date. The identity, affiliations and proposed compensation of NHB Advisors, Inc., the party proposed to serve as the Liquidating Trustee after the Effective Date, and the identities of the members of the Liquidating Trust Board have been disclosed in the Plan Supplement. The Liquidating Trustee and the members of the Liquidating Trust Board will serve in accordance with the Liquidating Trust Agreement as the same may be amended from time to time. The appointment of such individuals is consistent with the interests of creditors and with public policy.

O.  Rate Changes (11 U.S.C. § 1129(a)(6)). The Debtors do not conduct operations in a regulated industry, and accordingly, section 1129(a)(6) of the Bankruptcy Code is inapplicable to the Plan.

P.  Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The "best interests" test is applicable only to holders of (i) Claims that voted to reject the Plan and (ii) Claims in Class 6 (Interdebtor Claims) and Class 7 (Non-Debtor Subsidiary Claims) and Equity Claims and Interests in Class 8 (Equity Interests and Stock Claims), which will not receive or retain any property under the Plan, and therefore, are deemed to have rejected the Plan. The liquidation analysis contained in the Disclosure Statement and other evidence proffered, adduced and/or presented at the Confirmation Hearing in support thereof (a) is persuasive and credible, (b) has not been contradicted by other persuasive and credible evidence, (c) employs commonly accepted methodologies and is based on reasonable assumptions and (d) establishes that each holder of an impaired Claim against or Equity Interest in the Debtors either has accepted the Plan

or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. Accordingly, the Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

Q.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Class 1 (Priority Non-Tax Claims) is unimpaired and conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Because the Southwest Exchange Settlement Orders have been obtained and the Receiver Settlement Amount has been paid to the Receiver Settlement Trustee, all Class 2 (Southwest Exchange Claims) are deemed withdrawn or expunged and Class 2 is unimpaired and conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Class 3 (Senior Lender Secured Claims), Class 4 (Senior Lender Deficiency Claims) and Class 5 (General Unsecured Claims) are the impaired Classes of Claims against the Debtors entitled to vote on the Plan.  Classes 3, 4 and 5 have voted to accept the Plan in accordance with section 1126(b) and (c) of the Bankruptcy Code.  Class 6 (Interdebtor Claims), Class 7 (Non-Debtor Subsidiary Claims) and Class 8 (Equity Interests and Stock Claims) are impaired by the Plan and are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Although section 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to the deemed rejection of Classes 6, 7 and 8, the Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Classes 6, 7 and 8.

R.    Treatment of Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims pursuant to Article III of the Plan satisfies the requirements of sections 1129(a)(9) of the Bankruptcy Code.

S.    Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  Class 3 (Senior Lender Secured Claims), Class 4 (Senior Lender Deficiency Claims) and Class 5 (General Unsecured Claims), each of which is impaired under the Plan, have accepted the Plan, determined without including any acceptance of the Plan by any insider, thereby satisfying section 1129(a)(10) of the Bankruptcy Code.

T.    Feasibility (11 U.S.C. § 1129(a)(11)).  Because the Plan is a plan of liquidation, pursuant to section 1129(a)(11), the Plan is feasible.  Article VI of the Plan provides the means for implementing the Plan and demonstrates the Debtors' ability to make the payments anticipated in Article VI and Article VII.  Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

U.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  The Plan provides that (A) all fees contemplated by section 1129(a)(12) incurred through the Effective Date will be paid on the earlier of when due and the Effective Date, and (B) from and after the Effective Date, and until entry of an order converting, closing or dismissing the Cases, the Debtors and the Liquidating Trust shall be jointly liable and shall pay the fees assessed against a Debtor's estate until such time as a particular case is closed, dismissed or converted, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

V.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Section 1129(a)(13) does not apply in these Chapter 11 Cases because the Debtors are not obligated to pay any retiree benefits.

W.    Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation and accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Plan.

X.  Plan of an Individual Debtor (11 U.S.C. § 1129(a)(15)). The Debtors are not individuals and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Plan.

Y.  Transfers in Accordance With Non-Bankruptcy Law (11 U.S.C. § 1129(a)(16)). None of the Debtor entities are nonprofit entities, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Plan.

Z.  No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). The Debtors have requested that the Court confirm the Plan notwithstanding that Class 6 (Interdebtor Claims), Class 7 (Non-Debtor Subsidiary Claims) and Class 8 (Equity Interests and Stock Claims) were deemed to reject the Plan. Based on the evidence proffered, adduced and/or presented by the Debtors at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the Classes 6, 7 and 8 as required by the "cram-down" requirements of section 1129(b) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the Bankruptcy Code. Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of Classes 6, 7 and 8.

AA.  Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan filed in the Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable to the Plan.

BB.  Principal Purpose of Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

CC.  <u>Good-Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record of the Chapter 11 Cases, including evidence proffered, adduced and/or presented at the Confirmation Hearing, the Debtors, the members of the Committee, the Committee, the Prepetition Collateral Agent, the Senior Lenders, and their respective present or former members, officers, directors, employees, advisors or attorneys have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities in formulating, negotiating and implementing the Plan (including the Disclosure Statement), the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan and the administration of the Plan or the property to be distributed under the Plan and the such parties referenced in Section 10.4 of the Plan are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article X of the Plan.

DD.  <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## ADDITIONAL FINDINGS REGARDING CASES AND PLAN

EE.  <u>Implementation</u>.  All documents necessary to implement the Plan, including those contained in the Plan Supplement, have been negotiated in good faith and at arms' length and shall, upon completion of documentation and execution, be valid, binding and enforceable agreements and not be in conflict with any federal or state law.

FF.  <u>Transfers by the Debtors</u>.  All transfers of property of the Debtors' estates, including, without limitation, the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust, shall be free and clear of all liens, charges, claims, encumbrances and other interests, except as expressly provided in the Plan or this Order.

GG.  Exemption from Taxation.  The making and delivery of an instrument of transfer under the Plan, is exempt from taxation under any law imposing a stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, in accordance with section 1146(a) of the Bankruptcy Code.

HH.  Injunction, Exculpation and Releases.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the injunctions, exculpation and releases set forth in Article X of the Plan.  Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the releases and exculpation set forth in Article X of the Plan.  The parties to be released include certain non-debtor parties (including the Non-Debtor Subsidiaries, Dennis Stogsdill, Alvarez & Marsal North America, LLC and all of its affiliates, Lowenstein Sandler PC, Greenberg Traurig, LLP, and all of their employees or agents, the Prepetition Collateral Agent, each of the Senior Lenders and their professionals; the Committee and its professionals; and the Receiver and other parties to the Receiver Settlement Agreement, and his professionals, except as otherwise set forth in the Receiver Settlement Agreement) that have agreed to settle disputes, contribute funds, reduce claims and support the Plan, to forego asserting rights that could potentially have decreased recoveries and/or to provide valuable consideration assuring recoveries for the general unsecured creditors.  Accordingly, the release of potential claims belonging to the Debtors or the Estates pursuant to the Releases are part of a fair and reasonable settlement and a valid exercise of the Debtors' business judgment.  Based on the record before the Court, including evidence proffered, adduced and/or presented at the Confirmation Hearing, such provisions confer substantial benefit to the Debtors' estates and are (i) integral to the General Unsecured Creditor Settlement and essential to the formulation and implementation of the Plan, (ii) fair, equitable and reasonable, (iii) in the best interests of the Debtors, their estates and parties in interest and (iv) supported by valuable consideration.  Further, the injunction, exculpation and releases in the Plan (a) do not relieve any party of liability arising out of an act or omission constituting fraud, willful misconduct, criminal conduct

or gross negligence as determined by a Final Order, (b) do not apply to Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Non-Priority Tax Claims or obligations arising under the Plan, and (c) are consensual with respect to Holders of Claims, as such injunction and releases are only binding on such Holders who in fact voted in favor of confirmation of the Plan and did not mark their Ballots to indicate their refusal to grant the releases, provided however, that in accordance with Section 10.2(d) of the Plan, the Senior Lenders are not providing releases. Based upon the record of the Chapter 11 Cases, including the evidence proffered, adduced and/or presented at the Confirmation Hearing, and pursuant to Bankruptcy Rule 9019, this Court finds that the injunction, exculpation and releases set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law.

II. <u>Compromise of Controversies</u>. Pursuant to Bankruptcy Rule 9019 and in connection with the General Unsecured Creditor Settlement, in consideration for the classification, distribution and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims or controversies resolved pursuant to the Plan. All Plan distributions made to creditors holding Allowed Claims in any Class are intended to be and shall be final, and no Plan distribution to the holder of a Claim in one Class shall be subject to being shared with or reallocated to the holders of any Claim in another Class by virtue of any prepetition collateral trust agreement, shared collateral agreement, subordination agreement, other similar inter-creditor arrangement or deficiency Claim.

JJ. <u>General Unsecured Creditor Settlement</u>. As set forth in the Plan and further described in the Disclosure Statement, the Plan is premised on and incorporates a proposed compromise and settlement of certain disputed issues among the Senior Lenders, the Debtors, and the Committee, pursuant to Bankruptcy Rule 9019 and as permitted by section 1123(b)(3) of the Bankruptcy Code (the "General Unsecured Creditor Settlement"). As a result of good faith, arms-length negotiations between the Prepetition Collateral Agent, on behalf of the

Senior Lenders, the Debtors, and the Committee, on behalf of the Holders of General Unsecured Claims (other than the Holders of Southwest Exchange Claims), the Debtors, the Committee and the Senior Lenders reached an agreement being implemented pursuant to the Plan. The Plan will be funded from the cash collateral of the Senior Lenders. The Senior Lenders have agreed to carve out and forgo a portion of their recovery on account of their Allowed Senior Lender Secured Claims to provide cash distributions to Holders of General Unsecured Claims (other than the Holders of Southwest Exchange Claims which are covered by the Receiver Settlement Agreement) on the terms set forth in the Plan. Pursuant to the General Unsecured Creditor Settlement, the Senior Lenders have agreed to permit their cash collateral to be used to fund a payment of $700,000.00 (the "General Unsecured Cash Payment") to the Liquidating Trust. As provided for in the Plan and as discussed in the Disclosure Statement, the General Unsecured Cash Payment will be used exclusively to fund distributions to Holders of Allowed General Unsecured Claims. The General Unsecured Creditor Settlement also calls for the prosecution of the Litigation Claims by the Liquidating Trust and for the Litigation Claims to be assigned over to or vested in the Liquidating Trust free and clear of claims, liens, charges, trusts, and interests except those of the Senior Lenders and the Holders of Allowed General Unsecured Claims. The Senior Lenders have also agreed to permit their cash collateral to be used to fund the Litigation Fund Payment by the Debtors to the Liquidating Trust for the funding of fees and expenses incurred by the Liquidating Trust. The parties have agreed that any net recoveries from the Litigation Claims shall be used to repay the Senior Lenders a sum in the amount of $200,000 first, and thereafter shall be paid fifty percent (50%) to the Prepetition Collateral Agent on behalf of the Senior Lenders on account of the Senior Lenders' Deficiency Claims, and fifty percent (50%) to the Holders of Allowed General Unsecured Claims pro rata on account of their allowed pre-petition unsecured claims.

KK. The General Unsecured Creditor Settlement, as implemented through the Plan, resolves, among other things, challenges or defenses to the Senior Lenders' liens and debt

claims, including, without limitation, all available challenges under Chapter 5 of the Bankruptcy Code in consideration for the General Unsecured Cash Payment, a $10 million reduction of the principal balance of the Allowed Senior Lender Secured Claims, the Litigation Fund Payment, and the Distribution of the General Unsecured Creditor Litigation Proceeds to Holders of General Unsecured Claims. Based on the record of these Chapter 11 Cases, including evidence proffered, adduced and/or presented at the Confirmation Hearing, the General Unsecured Creditor Settlement and each of its constituent parts is (i) in the best interests of the Debtors, their estates and all parties in interest, including those whose claims are impacted thereby, and (ii) fair, equitable and reasonable, based on the Court's consideration of the following factors: (a) the probability of success in the litigation, (b) the complexity, expense and delay of the litigation involved, (c) the possible difficulties in collection and (d) the paramount interest of creditors. The General Unsecured Creditor Settlement accomplishes a fair and reasonable resolution of key issues in these cases, and each of the foregoing factors weighs in favor of approving the General Unsecured Creditor Settlement:

(a) The Committee and its members were heavily involved in the arm's-length negotiation of the General Unsecured Creditor Settlement, and the Plan was overwhelming accepted by the creditors who voted, including general unsecured creditors.

(b) The General Unsecured Creditor Settlement allows all creditors to get paid on or shortly after the effectiveness of the Plan, rather than continue waiting for uncertain future distributions while the estates incur significant administrative costs inherent in the defense, prosecution or other involvement in multiple litigations and other disputes.

(c) The General Unsecured Creditor Settlement accounts for the Estates' probability of success in the settled matters, as determined after lengthy and arm's-length negotiations by the Debtors, the Prepetition Collateral Agent and the Committee.

(d) The General Unsecured Creditor Settlement resolves hotly-contested and highly-complex disputes, nearly all of which are fact intensive and raise novel and complex issues of law, increasing the likelihood trying such disputes would result in numerous lengthy and expensive appeals, at a cost that the Debtors' Estates would be unable to fund in chapter 11 -- thereby

running the risk of a chapter 7 conversion -- and, at a minimum, would reduce eventual distributions to creditors.

(e)     The significant prospect of extensive trial and appellate litigation makes clear the very real risk to the Estates that several of the actions resolved in the General Unsecured Creditor Settlement could not be successfully pursued to the point of collection for the Estates without eliminating the Debtors' ability to exit from chapter 11, other than through a conversion to chapter 7, which, as shown in the Debtors' liquidation analysis, is not in the best interests of the Debtors' creditors.

(f)     The General Unsecured Creditor Settlement is in the paramount interests of creditors, as evidence by, among other things, the overwhelming support for the Plan by all of the Debtors' creditors that voted. The General Unsecured Creditor Settlement maximizes distributable value available to unsecured creditors.

LL.     Payment of Administrative Expense Claims and Priority Claims. Based on the evidence proffered, adduced and/or presented by the Debtors at the Confirmation Hearing, the Debtors' available funds are sufficient, in the aggregate, for payment in full in Cash, of all Allowed Administrative Expense Claims, Priority Tax Claims and Priority Non-Tax Claims.

MM.     Conditions Precedent to Effectiveness. The conditions to the Effective Date are set forth in Section 9.2 of the Plan. The Debtors, with the written consent of the Prepetition Collateral Agent and the Committee, may at any time, without notice or authorization of the Bankruptcy Court, waive in writing any or all of the conditions precedent to the Effective Date set forth in Section 9.2, whereupon the Effective Date shall occur without further action by any Person; provided, however, that the conditions specified in Sections 9.1(a) and (b) and Section 9.2(b) may not be waived.

NN.     Retention of Jurisdiction. Under Sections 105(a) and 1142 of the Bankruptcy Code, the Court may properly retain jurisdiction over any matter arising under the Bankruptcy Code, or arising in or related to the Chapter 11 Cases or the Plan after Confirmation and after the Effective Date, and any other matter or proceeding that is within the Bankruptcy Court's jurisdiction pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      _Findings of Fact and Conclusions of Law_.  The findings and conclusions set forth herein and the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2.      _Confirmation_.  All requirements for confirmation of the Plan have been satisfied.  Accordingly, the Plan in its entirety is CONFIRMED pursuant to section 1129 of the Bankruptcy Code.  The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

3.      _Solicitation and Notice_.  Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based on the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  The solicitation of votes on the Plan and the Solicitation Packages complied with the solicitation procedures in the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.  Notice of the Plan, and all related documents, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

4.      _Approval of Solicitation of Votes on Plan_.  The Debtors' solicitation of acceptances of the Plan pursuant to section 1125(b) of the Bankruptcy Code is hereby approved.

5.    Plan Classification Controlling.  The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classification set forth on the Ballots tendered or returned by the Debtors' creditors in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes and (c) shall not be binding on the Debtors, the Liquidating Trust, creditors or interest holders for purposes other than voting on the Plan.

6.    Cramdown.  The Court finds that the Plan satisfies all of the elements required by Section 1129 of the Bankruptcy Code.  To the extent that any Class was impaired under the Plan and did not vote to accept the Plan, the Court finds that the Debtors have satisfied the "cramdown" requirements of Section 1129(b) of the Bankruptcy Code with respect to such Class.

7.    The Debtors shall remain Debtors-in-Possession under the Bankruptcy Code until the Effective Date.  The Debtors may wind-up their affairs and the Liquidating Trustee may make distributions to creditors after the Effective Date in accordance with the Plan and the Liquidating Trust Agreement.

8.    Executory Contracts and Unexpired Leases Deemed Rejected.  Any and all Executory Contracts and Unexpired Leases not previously rejected by the Debtors, unless specifically assumed pursuant to the Bankruptcy Code prior to the date hereof or the subject of a motion to assume or assume and assign pending on the date hereof, shall be deemed rejected by the Debtors, effective as of the Effective Date.  Entry of this Order shall constitute approval of such rejections pursuant to Sections 365(a) and 1123 of the Bankruptcy Code.

9.     Bar Date For Rejection Damages.  If the rejection of an executory contract or an unexpired lease by the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or any of them or their properties or agents, successors, or assigns, unless a Proof of Claim is filed with the Bankruptcy Court and served upon the Debtors by the earlier of: (a) thirty (30) days after receipt of the notice of the Effective Date, or (b) such other deadline as the Court has or may set for asserting a Claim for such damages.

10.     Distribution Record Date.  The claims register for the Chapter 11 Cases shall be deemed closed as of the Distribution Record Date.  The Debtors or the Liquidating Trustee will have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Allowed Claims that are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date.  The Debtors or the Liquidating Trustee shall instead be entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the official claims register as of the close of business on the Distribution Record Date.

11.     Bar Date for Administrative Expense Claims.  Unless required to be filed by an earlier date by another order of this Court, Holders of Administrative Expense Claims other than the kind specified in Section 3.3(b) of the Plan shall file with the Bankruptcy Court and serve on the Debtors and counsel to the Prepetition Collateral Agent requests for payment on or before the thirtieth (30th) day after the Effective Date (the "Administrative Expense Bar Date") or forever be barred from submitting any request on account of such Administrative Expense Claim.  The notice of the Effective Date to be delivered pursuant to Bankruptcy Rules 2002(c)(3) and 2002(f) shall set forth such date and shall constitute notice of this Administrative Expense Bar Date.  The Debtors and the Prepetition Collateral Agent shall have thirty (30) days

(or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Expense Bar Date to review and object to such Administrative Expense Claims.

12.    <u>Bar Date for Applications for Professional Fees</u>. All applications for allowance and payment of professional fees for services rendered and reimbursement of expenses incurred in connection with the Chapter 11 Cases prior to the Effective Date are Administrative Expense Claims and shall be filed with the Bankruptcy Court within sixty (60) days after the Effective Date (the "Professional Fee Bar Date"). Any such application not filed within sixty (60) days after the Effective Date shall be deemed waived and the Holder of such Claim shall be forever barred from receiving payment on account thereof. The notice of the Effective Date to be delivered pursuant to Bankruptcy Rule 2002(f) shall set forth such date and shall constitute notice of this Professional Fee Bar Date. The Debtors, the Professionals, the Liquidating Trustee and the Prepetition Collateral Agent shall have thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Professional Fee Bar Date to review and object to such applications for professional fees for services rendered and reimbursement of expenses incurred.

13.    <u>Appointment of the Liquidating Trustee and the Members of the Liquidating Trust Board</u>. NHB Advisors, Inc., is appointed as the Liquidating Trustee and shall have such powers and duties and shall receive such compensation as is provided for in the Plan and the Liquidating Trust Agreement and disclosed at the Confirmation Hearing. Anabase International Corporation, Merrill Communications, LLC and Silver Oak Capital LLC are appointed to serve as Members of the Liquidating Trust Board and shall have such powers and duties and shall receive such compensation as is provided for in the Plan and the Liquidating Trust Agreement.

14.    <u>Binding Effect of the Plan</u>. The provisions of the Plan and this Order shall be, and hereby are now, and forever afterwards, binding on the Debtors, all holders of Claims

(including warranty claims) and Equity Interests (whether or not impaired under the Plan and whether or not, if impaired, they accepted the Plan), any other party in interest, any other party making an appearance in the Chapter 11 Cases, and any other person or entity affected thereby, as well as their respective heirs, successors, assigns, trustees, subsidiaries, affiliates, officers, directors, agents, employees, representatives, attorneys, beneficiaries, guardians, and similar officers, or any person claiming through or in the right of any such person or entity. Notwithstanding any provision to the contrary in the Plan, Disclosure Statement, this Confirmation Order, and any other documents necessary to the implementation of the Plan, including the Plan Supplement, nothing shall affect the rights of the United States Internal Revenue Service to assert setoff and recoupment.

15.  **Cancellation of Instruments and Stock**.  Pursuant to Section 6.7 of the Plan, on the Effective Date, all instruments evidencing or creating any indebtedness or obligation of the Debtors, except such instruments that are authorized, issued or Reinstated under the Plan, shall be canceled and extinguished.  Additionally, as of the Effective Date, all Equity Interests, and any and all warrants, options, rights or interests with respect to Equity Interests that have been issued, or that have been authorized to be issued but that have not been issued, shall be deemed canceled and extinguished without any further action of any party; provided, however, that the Senior Lender Notes shall continue in effect.  The Holders of or parties to the canceled notes, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.  Notwithstanding any provision contained in the Plan to the contrary, the distribution provisions contained in each of the Senior Lender Notes shall continue in effect.

16.  **Exemption from Securities Laws**. To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of beneficial interests in the Liquidating Trust shall be exempt from registration under the

Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any state or local law requiring registration prior to the offering, issuance, distribution or sale of securities.

17. <u>General Unsecured Creditor Settlement</u>. The General Unsecured Creditor Settlement is hereby approved. Pursuant to the General Unsecured Creditor Settlement incorporated by the Plan, sections 105 and 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, on the Effective Date, the provisions of the Plan constitute a good-faith compromise and settlement challenges or defenses to the Senior Lenders' liens and debt claims, including, without limitation, all available challenges under Chapter 5 of the Bankruptcy Code.

18. <u>Substantive Consolidation</u>. On the Effective Date, the Estates of MediCor Ltd., International Integrated Incorporated, International Integrated USA Incorporated, MediCor Management, Inc., MediCor Development Company, MediCor Aesthetics, III Acquisition Corporation d/b/a PIP.America, and Intellectual Property International, Inc. shall be deemed to be substantively consolidated solely for purposes of voting on, and making Distributions under, the Plan, and (i) all assets and liabilities of the Debtors shall be deemed to be merged, (ii) each obligation of any Debtor shall be deemed to be an obligation of all of the Debtors, (iii) a Claim against any one of the Debtors shall be deemed to be a Claim against all of the Debtors for all purposes, including, but not limited to, Distributions as provided under the Plan, (iv) each Claim filed in the Chapter 11 Case of any Debtor shall be deemed to be filed against all of the Debtors in accordance with the substantive consolidation of the assets and liabilities of the Debtors, (v) all transfers, disbursements and distributions made by any Debtor shall be deemed to be made by all of the Debtors and (vi) all Interdebtor Claims of the Debtors shall be canceled and deemed satisfied. Holders of Allowed Claims in each Class established pursuant to the Plan shall be entitled to the treatment set forth in the Plan for such Class without regard to which Debtor was originally liable for such Claim. Such substantive consolidation shall not (other than for the foregoing purposes) affect the legal and corporate structure of the Debtors. Notwithstanding

such substantive consolidation, each Debtor shall be responsible for the payment of U.S. Trustee fees until such Debtor's Chapter 11 Case is closed.

19.     Distributions Under Plan.    Commencing upon the Effective Date, the Debtors and the Liquidating Trustee, as applicable, shall be authorized and directed to distribute the amounts required under the Plan, including the Litigation Fund Payment and the General Unsecured Cash Payment, to the holders of Allowed Claims and the Liquidating Trustee, as applicable, according to the provisions of the Plan and the Liquidating Trust Agreement.

20.     Disputed Administrative, Priority Tax and Priority Non-Tax Claims Reserve and Plan Expense Reserve.    On or before the Effective Date and prior to making any Distributions, the Debtors shall establish the Disputed Administrative, Priority Tax and Priority Non-Tax Claims Reserve and shall transfer thereto the amount of Cash as deemed necessary by the Debtors, with the consent of the Prepetition Collateral Agent, to fund the Disputed Administrative, Priority Tax and Priority Non-Tax Claims Reserve.    Additionally, on or before the Effective Date and prior to making any Distributions, the Debtors shall establish the Plan Expense Reserve and shall transfer thereto the amount of Cash as deemed necessary by the Debtors, with the consent of the Prepetition Collateral Agent, to fund the Plan Expense Reserve.

21.     Disputed Claims.    The provisions of Articles VI and VII of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are found to be fair and reasonable and are approved.

22.     Liquidating Trust.    On the Effective Date, (i) the Liquidating Trust shall be established and the relevant agreement shall be executed by the parties thereto, (ii) all other necessary steps shall be taken to establish the Liquidating Trust and (iii) the Liquidating Trust Assets shall be transferred to the Liquidating Trust in accordance with the provisions of the Plan. The Liquidating Trust, the Liquidating Trustee, and the beneficiaries thereof, shall be entitled to

all of the benefits and protections, and shall have all of the rights and authority, granted in the Plan and herein with respect to the Liquidating Trust as if fully set forth in the Plan.

23.     Plan Supplement. The Plan Supplement documents are hereby approved by the Court. The Liquidating Trust Agreement is approved substantially in the form of the draft attached as Exhibit A to the Plan Supplement.

24.     Vesting of Assets. Pursuant to Section 6.6(b) of the Plan, notwithstanding any prohibition of assignability under applicable non-bankruptcy law, upon the Effective Date, the Debtors and/or the Committee shall transfer or cause to be transferred the Liquidating Trust Assets to the Liquidating Trust and, and in accordance with section 1141 of the Bankruptcy Code, title to the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Liens, Claims and Interests, except as expressly provided in the Plan. The Debtors shall execute any and all documents necessary to transfer and convey all of the Liquidating Trust Assets to the Liquidating Trust on the Effective Date.

25.     Vesting of Litigation Claims. Pursuant to Section 6.6(e)(3) of the Plan, any and all Litigation Claims accruing to or assertable by the Debtors shall remain Assets of the Estates pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code and on the Effective Date shall be transferred to and vest in the Liquidating Trust. Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, only the Liquidating Trust and the Liquidating Trustee shall have the right to pursue or not to pursue, or, subject to the terms of the Plan and the Liquidating Trust Agreement, compromise or settle any Litigation Claims owned or held by the Debtors or their Estates as of the Effective Date. From and after the Effective Date, the Liquidating Trust and the Liquidating Trustee may commence, litigate, and settle any Litigation Claims or rights to payment or claims that belong to the Debtors that may be pending on the Effective Date or instituted by the Liquidating Trust and Liquidating Trustee after the Effective Date, except as otherwise expressly provided in the Plan and the Liquidating Trust Agreement. Other than as set

forth in the Plan, no other Person may pursue such Litigation Claims after the Effective Date. The Liquidating Trustee shall be deemed hereby substituted as plaintiff, defendant, or in any other capacity for either the Committee or each Debtor in any action pending before the Bankruptcy Court that relates to a Litigation Claim without the need for filing any motion for such relief. In connection with the above-described Litigation Claims, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) shall also exist for the benefit of the Liquidating Trust and shall vest in the Liquidating Trustee and its representatives, and shall also be preserved for and as to the Debtors. The Liquidating Trustee is authorized to take all necessary actions to benefit from such privileges. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all Litigation Claims and approve any such settlement, whether commenced prior to or after Confirmation of the Plan and the Effective Date.

26. <u>Releases, Injunctions and Exculpation</u>. The release, injunction and exculpation provisions contained in the Plan including, without limitation, those set forth in Article X of the Plan, are expressly incorporated into this Confirmation Order as if set forth in full and are hereby authorized and approved. Pursuant to Section 10.2(e) of the Plan, this Confirmation Order permanently enjoins the commencement or prosecution by any entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released pursuant to the Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released in Section 10.2 of the Plan. This injunction shall not apply to a Holder of a Claim that marks its Ballot to indicate its refusal to grant the releases provided in Section 10.2, Senior Lenders pursuant to Section 10.2(d) of the Plan, or actions prosecuted by the Securities and Exchange Commission.

27.   <u>Conditions Precedent to Effective Date of Plan</u>.   The following are conditions precedent to the Effective Date of the Plan that must be (i) satisfied or (ii) waived in accordance with Section 9.4 of the Plan:

(a)   the Confirmation Order, in a form and substance reasonably acceptable to the Debtors, the Prepetition Collateral Agent and the Committee, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b)   at the deemed direction of the Prepetition Collateral Agent, the Debtors shall have delivered the Litigation Fund Payment and the General Unsecured Cash Payment, and as may be necessary, facilitated the transfer of any Litigation Proceeds, including, without limitation, the D&O Settlement Amount, collected or received prior to the Effective Date, to the Liquidating Trustee, in Cash or immediately available funds, pursuant to Section 6.5(a)(5) of the Plan;

(c)   the Debtors shall have established the Disputed Administrative, Priority Tax and Priority Non-Tax Claims Reserve and the Plan Expense Reserve, pursuant to Section 6.5(a)(2) of the Plan;

(d)   all documents, instruments, and agreements provided under, or necessary to implement, the Plan shall have been executed and delivered by the applicable parties; and

(e)   all other documents required to be Filed as an exhibit or schedule to the Plan, each in form and substance reasonably acceptable to the Debtors, the Prepetition Collateral Agent and the Committee, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

28.   <u>Waiver of Conditions Precedent</u>.   The Debtors, with the written consent of the Prepetition Collateral Agent and the Committee, may at any time, without notice or authorization of the Court, waive in writing any or all of the conditions precedent to the Effective Date set forth in Section 9.2 of the Plan, whereupon the Effective Date shall occur without further action by any Person; <u>provided</u>, <u>however</u>, that the conditions specified in Sections 9.1(a) and (b) and Section 9.2(b) of the Plan (subparagraphs 27(a) and (b) above) may not be waived.

29.     Effect of Non-Occurrence of Effective Date.  If this Order is vacated, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors, the Committee, the Senior Lenders or any other Person, or (iii) constitute an admission of any sort by the Debtors, the Committee, the Senior Lenders or any other Person.

30.     Reversal.  If any or all of the provisions of this Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order.  Notwithstanding any such reversal, modification or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto.

31.     Insurance Agreements.  Confirmation of the Plan and the occurrence of the Effective Date shall have no effect on insurance policies of the Debtors in which the Debtors are or were insured parties.  Each insurance company is prohibited and enjoined from denying, refusing, altering or delaying coverage on any basis regarding or related to the Chapter 11 Cases, the Plan or any provision within the Plan, including the treatment or means of liquidation set out within the Plan for insured Claims.

32.     Retention of Jurisdiction.  Pursuant to Article XI of the Plan, under Sections 105(a) and 1142 of the Bankruptcy Code and notwithstanding the entry of this Order and the occurrence of the Effective Date, and to the extent permitted by applicable law, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11

Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     allow, disallow, determine, subordinate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest (whether filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including the compromise, settlement and resolution of any request for payment of any Administrative Expense Claim or Priority Claim, the resolution of any Objections to the allowance or priority of Claims or Equity Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim or Equity Interest to the extent permitted under applicable law;

(b)     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(c)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all causes of action, and consider and act upon the compromise and settlement of any Claim, or cause of action;

(d)     determine and resolve controversies related to the Liquidating Trust;

(e)     determine and resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(f)     ensure that all Distributions to Holders of Allowed Claims under the Plan and the performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to Distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

(g)     construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with Section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all contracts, instruments, releases, other agreements or documents created in connection with the Plan, including, without limitation, the Disclosure Statement and the Confirmation Order, for the maintenance of the integrity of the Plan in accordance with Sections 524 and 1141 of the Bankruptcy Code following the occurrence of the Effective Date;

(h)     determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan (and all exhibits and schedules to the Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

(i)     modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code and the Plan;

(j)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(k)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(l)     determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(m)     determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(o)     enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(p)     determine and resolve controversies related to the Estates, the Debtors or the Liquidating Trust from and after the Effective Date;

(q)     hear and determine any other matter relating to the Plan; and

(r)     enter a final decree closing these Chapter 11 Cases.

33.     _Dissolution of the Committee_.  Upon the Effective Date, the Committee shall be deemed dissolved and the members of such Committee shall be released and discharged from all further rights and duties arising from or related to the Chapter 11 Cases.  The Professionals retained by the Committee shall not be entitled to assert any Administrative Expense Claims nor shall they have an Allowed Administrative Expense Claims for any services rendered or expenses incurred after the Effective Date except in respect of the preparation and prosecution of or any objection to any Committee Professional final fee application.

34.     _Payment of Statutory Fees and Provision of Reports_.  All fees payable pursuant to section 1930(a) of title 28 of the United States Code shall be paid on the earlier of when due or the Effective Date, or as soon thereafter as practicable.  From and after the Effective Date, the Debtors and the Liquidating Trust shall be jointly liable and shall pay the fees assessed against a Debtor's estate until such time as a particular case is closed, dismissed or converted.  In addition, prior to the Effective Date, the Debtors shall timely file all reports, including without limitation, monthly operating reports, required by the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules or Office of the United States Trustee.  After the Effective Date, the Liquidating Trustee shall timely file all reports, including without limitation, quarterly operating reports, as required by the Bankruptcy Court, Bankruptcy Code, Bankruptcy Rules or Office of the United States Trustee until entry of an order closing or converting the cases.

35.     _Modification of Plan_.  After the Confirmation Hearing and prior to the Effective Date of the Plan, the Debtors may, under Section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan so long as such

agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Liquidating Trust Agreement.

39. <u>Service of Documents</u>. Any pleading, notice or other document required by the Plan to be served shall be served pursuant to the terms of Section 12.13 of the Plan.

40. <u>Notice of Confirmation Order and Effective Date; Substantial Consummation of Plan</u>. On or before five (5) Business Days after the Effective Date, the Debtors shall mail or cause to be mailed to all Holders of Claims in Classes 3, 4 and 5 that are not Disallowed Claims, all parties who have entered their appearance in these cases and requested notice pursuant to Bankruptcy Rule 2002, all Professionals, and the Office of the United States Trustee a notice that informs such Persons of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Debtors deem appropriate or as may be ordered by the Bankruptcy Court. Such service constitutes good and sufficient notice pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c). Upon the Effective Date, the Plan shall be deemed substantially consummated as to each of the Debtors.

41. <u>Filing of Additional Documents</u>. The Debtors and the Liquidating Trustee are hereby authorized, empowered, and ordered to issue, execute, deliver, file and record any documents or court papers or pleadings, and to take any and all actions, that are necessary or desirable to implement, effectuate, and consummate the transactions contemplated by the Plan, whether or not specifically referred to therein and without further application or order of this Court, in each case with like effect as if exercised and taken by unanimous action of the directors, members and stockholders of the Debtors as may be necessary to cause the same to become effective under the applicable state law.

42. <u>Post-Confirmation Date Retention of Professionals</u>. Upon the Effective Date, any requirement that professionals employed by the Debtors comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered

after such date will terminate, and the Debtors will be authorized to employ and compensate professionals in the ordinary course of business and without the need for Bankruptcy Court approval.

43.    Term of Injunctions or Stays.  Unless otherwise provided in this Order or in the Plan, all injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

44.    Entire Agreement.  The Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations on such subjects, all of which have become merged and integrated into the Plan.

45.    Severability of Plan Provisions.  If the Court holds that any term or provision of the Plan is invalid, void or unenforceable and alters and interprets such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, such term or provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.

46.    Final Order.  This Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

47.  <u>Closing of Chapter 11 Cases</u>.  The Liquidating Trustee shall promptly, upon the full administration of the Chapter 11 Cases, file with the Court all documents required by the Bankruptcy Rules and any applicable orders of the Court to close the Chapter 11 Cases.

48.  <u>Conflicts Between Order and Plan</u>.  The provisions of the Plan and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is determined to be any inconsistency between any Plan provision and any provision of this Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Order shall govern and any provision of this Order shall be deemed a modification of the Plan and shall and take precedence.  The provisions of this Order are integrated with each other and are non-severable and mutually dependent.

Dated: N ov 9 , 2010
Wilmington, Delaware

_____
Honorable Mary F. Walrath
United States Bankruptcy Judge